UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LOEURTH SOK, | ) |
| Petitioner, | ) |
| v. | ) Civil Action No. 05-11358-RGS |
| KATHLEEN DENNEHY, | ) |
| Respondent. | ) |

## RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT OF
## HER MOTION TO DISMISS PETITION

Respondent Kathleen Dennehy (the "Respondent"), hereby submits this Memorandum of Law in Support of Her Motion to Dismiss Petition. The Habeas Corpus Petition (the "Petition") filed by Petitioner Loeurth Sok (the "Petitioner") must be dismissed, because the Petitioner has failed to satisfy the statutory requirement that he exhaust state remedies with respect to all claims in his Petition before it is filed, and he has named an improper party as respondent.[1]

## BACKGROUND

The Petitioner is currently an inmate at the Massachusetts Correctional Institution at Norfolk ("MCI-Norfolk"). (Pet.) On March 31, 1999, he was indicted by a Middlesex County, Massachusetts, grand jury on the following charges: three counts of robbery while armed and masked or disguised (Counts 1, 2, and 3); one count of home invasion (Count 4); one count of indecent assault and battery on a person aged fourteen or over (Count 5); one count of assault

---

[1] Since the Petition must be dismissed for the grounds stated herein, the Respondent does not address herein the merits of the Petition. Should this Court rule that the Petitioner may proceed with his habeas corpus action, the Respondent respectfully requests the opportunity to file an answer and a proposed scheduling order for the parties to brief the merits of the Petition.

with a dangerous weapon on a victim aged sixty or over (Count 6); and three counts of assault with a dangerous weapon (Counts 7, 8, and 9). (Super. Ct. Docket No. MICR1999-00419 – Version I, a true and accurate copy of which is attached hereto as Exhibit A.) He pled not guilty to all counts at his arraignment on April 22, 1999. (Id.) He was tried in the Middlesex County Superior Court (the "Superior Court") before the Honorable Judith Fabricant and a jury over five days between December 5 and December 11, 2000. (Id.) On December 7, 2000, the Petitioner filed a motion for a required finding of not guilty, and it was denied. (Id.) The next day, he filed a motion for required finding of not guilty at the close of evidence, and it too was denied. (Id.) On December 11, 2000, he was found guilty on all nine counts against him, and the guilty verdict on the count for indecent assault and battery on a person aged fourteen or over (Count 5) was placed on file. (Id.)

On December 20, 2000, the Petitioner was ordered to serve the following sentences: a term of imprisonment of between twenty years and twenty years and one day on the conviction for home invasion (Count 4); a term of imprisonment of between eight and twelve years on each of the convictions for armed robbery (Counts 1, 2, and 3), to be served concurrently with each other and with the sentence imposed in connection with the conviction for home invasion (Count 4); and a term of probation of five years with the conditions that he avoid direct and indirect contact with all victims and provide $100 in security on each of the remaining convictions (Counts 6, 7, 8, and 9), to be served concurrently with each other and to take effect on and after the sentence imposed in connection with the conviction for home invasion (Count 4). (Id.) The Petitioner was also given credit for eleven days of time served and was assessed a $60 victim-witness fee, a $100 legal counsel fee, and a $50 probation supervision fee. (Id.) He filed a notice of appeal that same day, and he filed a notice of appeal of his sentences to the Superior

Court's Appellate Division on January 3, 2001.  (Id.)  Additionally, on January 18, 2001, he filed a motion to revise and revoke his sentence, which motion does not appear from the docket to have been acted upon by the Superior Court.  (Super. Ct. Docket No. MICR1999-00419 – Version II, a true and accurate copy of which is attached hereto as Exhibit B.)

The Petitioner's appeal of his convictions was entered on the docket of the Massachusetts Appeals Court (the "Appeals Court") on September 16, 2002.  (App. Ct. Docket No. 2002-P-1248, a true and accurate copy of which is attached hereto as Exhibit C.)  While that appeal was pending, on August 22, 2003, the Superior Court's Appellate Division affirmed his sentences and dismissed his appeal before that body.  (Super. Ct. Docket No. MICR1999-00419 – Version II.)  Then, on May 6, 2004, the Appeals Court rendered a decision vacating the sentence that had been imposed in connection with the Petitioner's conviction for home invasion with a firearm and remanded the case for resentencing on that count with a term not to exceed twenty years nor to be less than ten years.  (App. Ct. Docket No. 2002-P-1248.)  It did not otherwise disturb his convictions.  (Id.)

On May 26, 2004, the Petitioner filed an Application for Leave to Obtain Further Appellate Review and supporting memorandum (the "ALOFAR") with the Massachusetts Supreme Judicial Court ("SJC").  (SJC Docket No. FAR-14148, a true and accurate copy of which is attached hereto as Exhibit D.)  His ALOFAR was denied on June 30, 2004.  (Id.)

In light of the decision of the Appeals Court, on December 12, 2004, the Superior Court revised the Petitioner's sentence with respect to the conviction for home invasion (Count 4) by ordering him to serve a term of between twelve and twenty years.  (Super. Ct. Docket No. MICR1999-00419 – Version II.)

3

**ARGUMENT**

I. **The Petitioner failed to satisfy the statutory requirement that he first exhaust state remedies with respect to all claims in his Petition.**

The Petitioner is barred from pursuing this action because he failed to satisfy the statutory requirement that he exhaust his state remedies with respect to all claims in his Petition before it is filed. This exhaustion requirement is codified at 28 U.S.C. § 2254, which provides in relevant part as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State;  or
>
> (B)(i) there is an absence of available State corrective process;  or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>  . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254, <u>as amended by</u> the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), P.L. No. 104-132, Title I, § 104, 110 Stat. 1218 (effective April 24, 1996).

The exhaustion requirement is primarily designed to promote comity in our system of federalism, as the U.S. Supreme Court has explained:

> The exhaustion doctrine is principally designed to protect the state court's role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with

concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

Rose v. Lundy, 455 U.S. 509, 518 (1982) (quoting Darr v. Burford, 339 U.S. 200, 204 (1950), overruled in non-relevant part by Fay v. Noia, 372 U.S. 391 (1963)); see also Duckworth v. Serrano, 454 U.S. 1, 3 (1981) ("The exhaustion requirement . . . serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights."); Nadworny v. Fair, 872 F.2d 1093, 1096 (1st Cir. 1989) (explaining that exhaustion requirement embodies "the federal sovereign's respect for the state courts' capability to adjudicate federal rights"); Mele v. Fitchburg Dist. Court, 850 F.2d 817, 819 (1st Cir. 1988) (noting that exhaustion requirement "ensures that state courts have the first opportunity to correct their own constitutional errors," enables federal courts to accord appropriate respect for state sovereignty, and promotes comity by minimizing friction between federal and state justice systems).  An additional benefit of the requirement is that "claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review." Rose, 455 U.S. at 519.

In light of these important purposes, a petitioner will not be found to have satisfied the exhaustion requirement unless each and every claim in his petition has been exhausted. See id. at 510, 518-20.  This rule is designed to encourage petitioners to exhaust all claims and present the federal court with a single petition, rather than piecemeal litigation. Id. at 520.  It also "relieve[s] the district courts of the difficult if not impossible task of deciding when claims are related," and it reduces the risk that they will consider unexhausted claims. Id at 519.

Moreover, it is not sufficient for a petitioner to raise his federal the claim merely through a motion in state trial court or even an appeal to an intermediate court.   Rather, he must "present,

5

or do his best to present, his federal claim to the state's highest tribunal." Adelson, 131 F.3d at 263; see also Mele, 850 F.2d at 819-20 (stating that it has long been the rule that power of highest state court must be exhausted before federal court will consider questions posed in habeas petition; affirming that "[i]t is not enough merely to raise an issue before an intermediate court; one who seeks to invoke the federal habeas power must fairly present – or do his best to present – the issue to the state's highest tribunal"; and noting that Massachusetts petitioner was obliged to try to bring his constitutional objections before SJC to preserve them for federal habeas review).

A claim will only be found exhausted if both its factual and federal legal bases have been presented to state courts. See Nadworny, 872 F.2d at 1096 (stating that state prisoner must present both factual and legal underpinnings of claim to state courts for exhaustion requirement to be found satisfied); see also Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997) (noting that "setting forth the factual underpinnings of a claim is insufficient, in and of itself" as the "petitioner must also elucidate the legal foundation of his federal claim"). The test for whether the factual and federal legal bases are adequately presented "is substantive: was the claim presented in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question?" Scarpa v. DuBois, 38 F.3d 1, 6 (1994). Furthermore, the bases must be presented clearly and directly:

> [T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.

Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988).

Elaborating on this requirement, The First Circuit Court of Appeals has identified five ways in which fair presentment may be made:

> "1) citing a specific provision of the Constitution; 2) presenting the substance of a federal constitutional claim in such manner that it likely alerted the state court to the claim's federal nature; 3) reliance on federal constitutional precedents; and 4) claiming a particular right specifically guaranteed by the Constitution"[; and 5)] . . . the assertion of a state law claim that is functionally identical to a federal claim.

Scarpa, 38 F.3d at 6 (quoting Gagne v. Fair, 835 F.2d 6, 7 (1st Cir.1987), and noting that the list was not necessarily exhaustive).

Furthermore, fair presentation "requires that the constitutional analysis necessary to resolve the ultimate question posed in the habeas petition and in the state court proceedings, respectively, be substantially the same." Scarpa, 38 F.3d at 6; Martens, 836 F.3d at 717 ("[T]he legal theory in the state and federal courts must be the same." (quoting Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987)). In light of all of the foregoing, "a habeas petitioner bears a heavy burden" to show that his claims were "fairly and recognizably presented to the state courts." Adelson, 131 F.3d at 262.

The Petitioner here cannot meet this burden, as several claims articulated in his Petition were never clearly and directly presented as federal claims in his ALOFAR to the SJC.[2] For example, in Ground One of the Petition, the Petitioner contends that he "did not make a knowing, voluntary and intelligent waiver of his Miranda Rights and other rights regarding self-incrimination, right to legal counsel and right not to be questioned for lengthy periods while in custody and under duress." (Pet. ¶ 12.) The Petitioner's reference to "other rights regarding self-incrimination, right to legal counsel and right not to be questioned for lengthy periods while

---

[2] The discussion of particular unexhausted claims herein should not be construed as implying that the Respondent considers other claims to have been properly exhausted.

7

in custody and under duress" separately from his "Miranda Rights" within a series indicates that he is referring to rights that are separate and distinct from those discussed in Miranda v. Arizona, 384 U.S. 436, 444-45 (1966).  (Pet. ¶ 12.)  His ALOFAR, however, included no clear and direct arguments that any such rights that may be available to him under federal law were violated.  (ALOFAR, a true and accurate copy of which is attached hereto as Exhibit E.)

The Respondent concedes that the Petitioner devoted a section of his ALOFAR's "Statement Why Further Appellate Review is Appropriate" to arguing that he had failed to knowingly, intelligently, and voluntarily waive his rights upon arrest.  (Id. at 17-18.)  Notably, though, the only indication within that section of exactly what rights the Petitioner was referring to was the section's heading, "Defendants Waivers/Miranda [sic]."  (Id. at 17.)  The Respondent further acknowledges that that section of the ALOFAR directs the reader to the ALOFAR's Statement of Facts, in which the Petitioner raised certain issues regarding the circumstances of his post-arrest interrogation and purported waiver of rights.  (Id. at 3-15.)  Included among this recitation of issues were references to Commonwealth v. Rosario, 422 Mass. 48, 56 (1996), in which the SJC adopted the following rule:

> An otherwise admissible statement is not to be excluded on the ground of unreasonable delay in arraignment, if the statement is made within six hours of the arrest (day or night), or if (at any time) the defendant made an informed and voluntary written or recorded waiver of his right to be arraigned without unreasonable delay.  This rule will (a) largely eliminate debate over the reasonableness of any delay, (b) bar admission of a statement made after the six-hour period unless there is a waiver of prompt arraignment, and (c) apply without regard to when either the court is in session or the arrest made.

(ALOFAR at 8-15.)  However, like the section discussed above, the Statement of Facts makes no mention of any federal "right not to be questioned for lengthy periods while in custody and under duress," and it contains no clear and explicit reference to "other rights regarding self-

incrimination" or "right[s] to legal counsel" *beyond* those referenced in Miranda, 384 U.S. at 444-45.  (Id. at 8-15.)  Moreover, to the extent that any such reference can be read into the Statement of Facts, it would not constitute sufficient presentment.  That is, it could not be deemed to have been presented "face-up and squarely," but at best would have to be viewed as consisting of "some makeshift needles in the haystack of the state court record" and "oblique references which hint that a theory may be lurking in the woodwork" that the First Circuit Court of Appeals has found "will not turn the trick."  Martens, 836 F.2d at 717.

Ground Two of the Petition also appears to include an unexhausted claim.  That portion of the Petition begins by asserting that the "Trial Court allowed a highly prejudicial police report (witness statement) into evidence" where defense counsel "could not cross examine the person who allegedly gave the statement to the police."  (Pet. ¶ 12.)  This issue is referenced in his ALOFAR.  (ALOFAR at 18-23.)  However, the Petitioner continues in Ground Two of the Petition by complaining that the "Trial Court refused to allow into evidence that co-defendant was acquitted of all charges [sic]."  (Pet. ¶ 12.)  To the extent that that complaint about the trial court's failure to admit certain evidence constitutes a separate claim in support of habeas corpus relief, it must be deemed unexhausted, because it was nowhere raised within the Petitioner's ALOFAR.  (ALOFAR at 18-23).

Additionally unexhausted is the claim within Ground Four of the Petition that "the Massachusetts Home Invasion Statute is unconstitutional" in part because the statute "is overly broad."  (Pet. ¶ 12.)  Among the points raised within the same section is the following:

> If a person becomes angry or upset and walks across the hall of his
> apartment building or dormitory and sticks his head in his neighbor's door
> and says 'if you do not turn down your t.v., I will hit you with my beer
> bottle' that person has just committed home invasion according to [the
> applicable statute] and, if found guilty, he/she must serve a minimum of
> 20 years.

9

(Pet. ¶ 12.)  The doctrine of overbreadth holds that a party may assert a facial challenge to a statute that is "written so broadly that [it] may inhibit the constitutionally protected speech of third parties" even if the conduct of the party invoking the doctrine is unprotected.  <u>Members of the City Council v. Taxpayers for Vincent</u>, 466 U.S. 789, 797-801 (1984) (indicating that "[i]n short, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds").  The doctrine constitutes an exception to "the general rule that constitutional adjudication requires a review of the application of a statute to the conduct of the party before the Court."  <u>Id.</u> at 797-99.  That exception is "predicated on 'a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'"  <u>Id.</u> at 799-801 (quoting <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 612 (1973)).  Nowhere in the ALOFAR at issue here did the Petitioner directly or indirectly invoke the overbreadth doctrine or otherwise argue that the Massachusetts home invasion statute would unduly criminalize conduct that is protected by the First Amendment or any other federal constitutional provision.  (ALOFAR at 25-28.)

It is true that the Petitioner did argue in his ALOFAR that the Massachusetts home invasion statute "is unconstitutionally vague and thus violates [his] due process rights." (ALOFAR at 25-28.)  The legal concept of vagueness, however, is distinct from the concept of overbreadth.  <u>See, e.g.</u>, <u>Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 497 (1982) (explaining that a law that is not overbroad may still be unduly vague and thus a violation of due process).  It is also not disputed that the Petitioner sought to persuade the SJC that the terms of and penalties imposed by the home invasion statute are illogical.  (ALOFAR at 25-28 & n.8.)  He reasoned in part as follows:

> The statute does not even require intent to harm or require actual harm. A person who is angry or drunk and enters the dwelling or another [sic], where people are present, and threatens another with anything from a pen knife to a spaghetti pot, could be found guilty of Home Invasion, even though no one was harmed and the alleged victims thought the actions of the perpetrator were comical and they were never in fear. It does not require either intent on the part of the perpetrator or fear or harm on the part of the alleged victims.

(ALOFAR at 26-27 n.8 (citing Commonwealth v. Mahar, 430 Mass. 643, 652 n.4).) However, mere arguments that the statute extends to conduct that the Petitioner himself would not consider harmful do not amount to an invocation of the doctrine of unconstitutional overbreadth. Indeed, such arguments regarding the wisdom of the statute and its scope are better directed to the Massachusetts Legislature. The conclusion remains that the Petitioner's overbreadth claim was not exhausted through presentation to the SJC.

The Petitioner's failure to exhaust was not excused by application of any statutory alternative to exhaustion. As in Mele, the Petitioner has not argued and cannot argue that there is an absence of state collateral procedures available to permit him to raise his federal claims. 850 F.2d at 824 (stating that court was unaware of any lack of available procedures in Massachusetts, and noting that "Massachusetts provides a broad panoply of procedures for post-conviction challenges to the validity of criminal sentences"). He also cannot maintain that any such assertion of federal claims in state court would be futile, and "it would be presumptuous . . . to conclude that [the Petitioner] is barred from seeking such relief when he has never endeavored to pursue it." Id.

In light of the Petitioner's failure to exhaust state remedies and inability to invoke any statutory exception, dismissal of the Petition at issue is warranted. See, e.g., Rose, 455 U.S. at 510 (affirming that statutory scheme requires dismissal of petition containing nonexhausted claims); Duckworth, 454 U.S. at 4 ("Because obvious constitutional errors, no less than obscure

11

transgressions, are subject to the requirements of § 2254(b), the Court of Appeals was obligated to dismiss respondent's petition.").

## II. The Petitioner has named an improper party as respondent.

Even if this action were not barred for failure to exhaust state remedies, it could not be maintained against Respondent Kathleen Dennehy, because she is not the Petitioner's immediate custodian. Title 28, Section 2243 provides that a writ of habeas corpus or order to show cause "shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243. Thus, a habeas corpus action may only be maintained against the individual who is the petitioner's immediate custodian, that is, the "superintendent of the facility in which he is being held" who "has day-to-day control over the petitioner and is able to produce the latter before the habeas court." Vasquez v. Reno, 233 F.3d 688, 691 (1st Cir. 2000) (concluding that Attorney General of the United States was improper respondent in habeas corpus action by petitioner confined to federal detention center). Consistent with this authority, Rule 2 of the Rules Governing Section 2254 Cases (the "Habeas Corpus Rules") provides that, "[i]f the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody." Habeas Corpus Rule 2(a). The Petitioner here is presently in state custody in MCI – Norfolk. (Pet.) Accordingly, Kathleen Dennehy should not have been named as a respondent and should not be forced to defend against this action. See Vasquez, 233 F.3d at 691; Habeas Corpus Rule 2.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss Petition should be allowed, and the Petition should be dismissed in its entirety.

>Respectfully submitted,
>
>THOMAS F. REILLY
>ATTORNEY GENERAL
>
>/s/ Randall E. Ravitz
>Randall E. Ravitz (BBO # 643381)
>Assistant Attorney General
>Criminal Bureau
>One Ashburton Place
>Boston, Massachusetts  02108
>(617) 727-2200, ext. 2852

Dated:  March 24, 2006


**CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 7.1(A)(2)**

    Pursuant to Local Rule 7.1(A)(2), I hereby certify that I attempted to reach the Petitioner's counsel by telephone today in order to discuss the issue raised by the Motion above, but failed to reach him.


Dated:  March 24, 2006        /s/ Randall E. Ravitz
                                                     Randall E. Ravitz

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the Electronic Case Filing system without its exhibits will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies with all exhibits will be sent to the registered participants and those indicated as non-registered participants on the date set forth below.


Dated: March 24, 2006                                    /s/ Randall E. Ravitz
                                                         Randall E. Ravitz