# United States District Court
# District of Massachusetts

LOEURTH SOK,
       Petitioner,

   v.                         CIVIL ACTION NO. 05-11358-RGS

KATHLEEN DENNEHY,
       Respondent.

## *REPORT AND RECOMMENDATION*
## *ON MOTION TO DISMISS PETITION (#6)*

COLLINGS, U.S.M.J.

### *I.  Introduction*

On June 28, 2005, Loeurth Sok ("Sok" or "petitioner") commenced the instant action by filing a petition for writ of habeas corpus (the "petition") pursuant to 28 U.S.C. § 2254 (#1).  On March 24, 2006, after receiving an extension of time from the Court, the respondent Kathleen Dennehy ("respondent") filed the instant motion to dismiss (#6) along with a supporting memorandum of law (#7) and an appendix (#8).  After a court approved

extension of time, on April 24, 2006, petitioner filed a motion in opposition to respondent's motion to dismiss (#10).

This case has been referred to the undersigned for the issuance of a Report and Recommendation on the petition (#2). For the reasons discussed below, the Court shall recommend that the petition be dismissed on the basis that not all of the grounds in the petition have been exhausted.[1]

## II. The Facts and the Procedural History[2]

On or about January 9, 1999, several people were robbed in Lowell, Massachusetts at approximately 1:00 a.m. (#7, Ex. E at 3) The robbery was reported sometime the next day. (#7, Ex. E at 3) Several hours after the victims, all or some of whom were Cambodian, were robbed, they called petitioner's

---

[1]

Respondent also moved to dismiss the petition on the grounds that she is improperly named as respondent. Respondent points out that petitioner is currently in state custody at MCI-Norfolk but does not inform the Court who is the properly named respondent. The Court shall not recommend that the petition be dismissed for failure to name the proper respondent. However, petitioner should file a motion with the Court to modify the petition in order to name the proper respondent. Under Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "the petition must name as respondent the state officer who has custody." Petitioner's argument that he has relocated prisons within Massachusetts a number of times and therefore Dennehy is the proper respondent because as the Commissioner of Corrections, she is "ultimately responsible for petitioner's placement" and has overall custody of petitioner is unavailing. (#10 at 7)

[2]

Petitioner did not include a recitation of the facts and procedural history in any of his instant pleadings although a lengthy version is included in his Application for Further Appellate Review ("ALOFAR") filed with the Supreme Judicial Court ("SJC") (#7, Ex. E). Respondent's version is at pp. 1-3 of her Memorandum of Law in Support of Her Motion to Dismiss Petition (#7). In the interest of brevity, I restate only those facts that are relevant for purposes of issuing a Report and Recommendation on the instant petition, often quoting the facts verbatim from Respondent's Memorandum #7 and petitioner's ALOFAR, albeit without quotation marks.

sister, Aun Sok ("Aun"), who was approximately 17 years old at the time. (#7, Ex. E at 3) Aun was friends with one or more of the victims. (#7, Ex. E at 3) The victims claimed they called Aun so that she could contact the police and help with translation. (#7, Ex. E at 3)

When the crime was initially investigated, no mention was made to the police that petitioner was involved in any way. (#7, Ex. E at 4) There was no mention of petitioner's name until 11 days after the incident when one of the witnesses decided to tell police during questioning that it was petitioner who committed the crime. (#7, Ex. E at 5) The victims gave detailed statements implicating petitioner and co-defendant John Prum ("Prum") and allegedly picked both of their photographs out of a police composite and then testified at a grand jury implicating both petitioner and Prum. (#7, Ex. E at 5) Prum was tried before petitioner and was acquitted on all charges. (#7, Ex. E at 5)

At Prum's trial, one of the victims, Ronny Thethbun ("Thethbun"), testified that when she had looked at the police array of photos, petitioner's photo had been circled. (#7, Ex. E at 6) She further testified that she recognized petitioner from the neighborhood but was uncertain as to whether he was involved in the alleged home invasion. (#7, Ex. E at 6) Thethbun could not testify at petitioner's trial due to medical reasons so her testimony was read into

evidence. (#7, Ex. E at 6) The trial judge also allowed into evidence an unsworn statement that Thethbun had given to the police. (#7, Ex. E at 6) Petitioner's counsel repeatedly objected to the police report coming into evidence. (#7, Ex. E at 7)

Petitioner was arrested 37 days after the first witness allegedly implicated him in the crime, on a Friday night after the courts had closed. He was taken from his home during a gathering of friends and family who were at his house to mourn the death of his father who had died several days before. (#7, Ex. E at 8) Petitioner was brought to the Lowell Police Station and was held in custody for 26 hours without food or sleep before being questioned about the crimes he allegedly committed. (#7, Ex. E at 8)        Petitioner was interrogated by a single officer, Conroy, who claimed that petitioner voluntarily waived his Miranda rights, his right not to be interrogated for more than six hours after his arrest and his right to have his confession recorded. (#7, Ex. E at 9) Conroy testified that he provided petitioner with a sheet of paper with Miranda rights in English and in Cambodian. (#7, Ex. E at 9) None of the other rights was provided to petitioner in Cambodian. (#7, Ex. E at 9) At trial, petitioner denied that he understood his rights and denied that he freely and voluntarily signed the waivers and made the confession. (#7, Ex. E at 9)

Petitioner also testified that when he waived his rights and signed his confession, which was typed up by Conroy, he was intimidated and threatened by Conroy. (#7, Ex. E at 9) Despite Conroy's determination that petitioner was "perfectly familiar" with English, there was evidence that petitioner does not have a good command of English and struggles to articulate his thoughts in English. (#7, Ex. E at 13)

Ben Holland ("Holland"), a prosecution witness, testified at petitioner's trial that Conroy interrogated him alone and coerced him into signing a statement against petitioner. (#7, Ex. E at 14) Holland was not charged with the crimes, as were petitioner and Prum, but he did testify that Conroy threatened to charge him if he did not cooperate. (#7, Ex. E at 14)

There were no witnesses, other than Conroy, to petitioner's alleged confession. (#7, Ex. E at 15) The confession was not recorded by audio or video tape, and petitioner did not have an attorney, an interpreter or any other person present when he made the alleged confession. (#7, Ex. E at 15)  Defense counsel objected to petitioner's confession being offered into evidence. (#7, Ex. E at 10) He also objected to petitioner's confession and waiver of rights being presented to the jury on the grounds that an independent determination of the voluntariness had not yet been made by the trial court. (#7, Ex. E at 10-11)

5

Defense counsel filed a motion to suppress petitioner's confession which subsequently was denied. (#7, Ex. E at 15)

On December 11, 2000, after a five day trial, petitioner was found guilty of all nine counts[3] against him. (#7 at 2) On December 20, 2000, petitioner was sentenced, and on that same day, he filed a notice of appeal to the Superior Court's Appellate Division. (#7 at 2) On January 3, 2001, he filed a notice of appeal of his sentences. (#7 at 2-3) On January 18, 2001, he filed a motion to revise and revoke his sentence, which appears never to have been acted upon by the Superior Court. (#7 at 3)

Petitioner's appeal of his convictions was entered on the docket of the Appeals Court on September 16, 2002. (#7 at 3) While that appeal was pending, on August 22, 2003, the Superior Court's Appellate Division affirmed his sentences and dismissed his appeal. (#7 at 3) On May 6, 2004, the Appeals Court vacated the sentence that had been imposed in connection with petitioner's conviction for home invasion with a firearm and remanded the case for resentencing on that count with a term not to exceed twenty years nor to be

---

[3]

     Those counts were three counts of armed robbery while armed and masked or disguised, one count of home invasion, one count of indecent assault and battery on a person aged fourteen or over, one count of assault with a dangerous weapon on a victim aged sixty or over, and three counts of assault with a dangerous weapon. (#7 at 1-2)

less than ten years. (#7 at 3)

On May 26, 2004, petitioner filed an ALOFAR with the SJC. (#7 at 3) His ALOFAR was denied on June 30, 2004. (#7 at 3) On December 12, 2004, in light of the decision by the Appeals Court, the Superior Court revised petitioner's sentence with respect to the conviction for home invasion, ordering him to serve a term of between twelve and twenty years. (#7 at 3)

### III. Discussion

Petitioner has asserted that he is entitled to habeas relief based on four separate grounds. Those grounds are as follows:

*Ground 1:*   Petitioner did not make a knowing, voluntary and intelligent waiver of his Miranda Rights and other rights regarding self incrimination, right to legal counsel and right not to be questioned for lengthy periods while in custody and under duress (#1 ¶ 12);

*Ground 2:*   Trial Court allowed a highly prejudicial police report (witness statement) into evidence....Trial Court refused to allow into evidence that co-defendant was acquitted of all charges (#1 ¶ 12);

*Ground 3:*   The totality of the facts and circumstances were against the weight of the evidence.(#1 ¶ 12);

*Ground 4:*   Petitioner asserts that the Massachusetts Home Invasion Statute is unconstitutional. It is overly broad, vague and has repeatedly been criticized by Trial Courts, prosecutors, defense attorneys, Appeals Courts

7

and the Supreme Judicial Court of Massachusetts as a problem statute.(#1 ¶ 12)[4].

Respondent argues that petitioner is not entitled to habeas relief because not all of the grounds in the petition have been exhausted. (#15 at 7-12) Petitioner disagrees with respondent, asserting that all of the grounds in the petition have been exhausted. In short, respondent is correct that some of the grounds are unexhausted and thus, the Court will recommend that the petition be dismissed.

It is well-established that "[b]efore a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."[5] *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). As explicated by the First Circuit:

> In recognition of the state courts' important role in protecting constitutional rights, the exhaustion principle holds, in general, that a federal court will not entertain an application for habeas relief unless the

---

[4]

Petitioner included supporting facts as part of the grounds warranting relief. The Court did not restate the supporting facts but only the actual grounds upon which petitioner relies.

[5]

This rule has since been codified. *See* 28 U.S.C. § 2254(b)(1)(A).

petitioner first has fully exhausted his state remedies in respect to each and every claim contained within the application. *See Rose v. Lundy*, 455 U.S. 509,518-19, 102 S.Ct. 1198, 1203-04, 71 L.Ed.2d 379 (1982). Although exhaustion is not a jurisdictional bar to federal habeas review of a state court conviction, it is "the disputatious sentry [that] patrols the pathways of comity" between the federal and state sovereigns. *Nadworny v. Fair*, 872 F.2d 1093, 1096 (1 Cir.,1989). With few exceptions--none of which are applicable here--federal courts have enforced the exhaustion requirement consistently and rigorously. *See, e.g., Rose*, 455 U.S. at 518, 102 S.Ct. at 1203; *Martens v. Shannon*, 836 F.2d 715, 718 (1 Cir.,1988). Thus, a habeas petitioner bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of this federal claim. *See Picard v. Connor*, 404 U.S. 270, 276-77, 92 S.Ct. 509, 512-13, 30 L.Ed.2d 438 (1971); *Nadworny*, 872 F.2d at 1098. To carry this burden, the petitioner must demonstrate that he tendered each claim "in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." *Scarpa v. Dubois*, 38 F.3d 1, 6 (1 Cir.,1994), *cert. denied,* 513 U.S. 1129 (1995).

*Adelson v. DiPaola*, 131 F.3d 259, 261-2 (1 Cir., 1997); *Casella v. Clemons*, 207 F.3d 18, 20 (1 Cir., 2000); *Nadworny*, 872 F.2d at 1101.

In short, it is abundantly clear that in order to establish that the state court was appropriately apprised of the federal issues such that the exhaustion hurdle is cleared,

...a petitioner must inform the state court of both the

factual and legal underpinnings of the claim. *See Picard v. Connor*, 404 U.S. 270, 276-78, 92 S.Ct. 509, 512-13, 30 L.Ed.2d 438 (1971). The test is substantive: was the claim presented in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question? *See Nadworny v. Fair*, 872 F.2d 1093, 1101 (1 Cir., 1989). While the answer to the question must not be made to depend on "ritualistic formality," *id.* at 1097, neither is the answer wholly in the eye of the beholder.

In *Gagne v. Fair*, 835 F.2d 6, 7 (1 Cir., 1987), we catalogued four ways in which the requirement of fair presentment may be fulfilled: "1) citing a specific provision of the Constitution; 2) presenting the substance of a federal constitutional claim in such manner that it likely alerted the state court to the claim's federal nature; 3) reliance on federal constitutional precedents; and 4) claiming a particular right specifically guaranteed by the Constitution." We did not, however, attribute exclusivity to this compendium. In *Nadworny*, 872 F.2d at 1099-1100, we mentioned a fifth possibility, namely, the assertion of a state law claim that is functionally identical to a federal claim. These possibilities recognize that certain constitutional violations have the capacity to rest on a variety of factual bases. While the facts and legal theories need not be propounded in precisely the same terms, fair presentation requires that the constitutional analysis necessary to resolve the ultimate question

posed in the habeas petition and in the state court proceedings, respectively, be substantially the same. *See Lanigan v. Maloney*, 853 F.2d 40, 44-45 (1 Cir.,

1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102
L.Ed.2d 780 (1989).

*Scarpa*, 38 F.3d at 6; *see also Burbank v. Maloney*, 47 F. Supp.2d 159, 162 (D.
Mass., 1999).

The total exhaustion rule was modified in 1996 with the passage of the

Antiterrorism and Effective Death Penalty Act ("AEDPA"). Specifically,

> AEDPA permits the court to deny on the merits habeas
> petitions containing unexhausted claims. Section 2254
> of Title 28 now states, in relevant part:

> (b)(1) An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted unless it appears
> that–

>> (A) the applicant has exhausted the
>> remedies available in the courts of the
>> State;
>>                            * * * * *

> (2) An application for a writ of habeas corpus may be
> denied on the merits, notwithstanding the failure of the
> applicant to exhaust the remedies available in the
> courts of the State.

> Section 2254(b) thus gives courts discretion to deny
> unexhausted petitions on the merits, though it does not
> require them to do so.

*Berger v. Stinson*, 97 F. Supp.2d 359, 363 (W.D.N.Y., 2000); *see also Hoxsie v.
Kerby*, 108 F.3d 1239, 1242-3 (10 Cir.), *cert. denied*, 522 U.S. 844 (1997);
*Bordas v. Walker*, 2000 WL 1867915,*4 (S.D.N.Y., 2000); *Richter v. Artuz*, 77

11

F. Supp.2d 385, 393-4 (S.D.N.Y., 1999).

With the legal framework in place, it is time to turn to an examination of the petitioner's claims. Specifically, the Court must determine whether such claims were fairly presented to the SJC such that they can be considered exhausted. If they were not so presented, then they must be dismissed on the grounds that they are unexhausted.

In order to determine whether the claims in this case were exhausted, the Court must review petitioner's ALOFAR.[6] The claims brought before the SJC were that:

> .    the issues raised on appeal by [petitioner] concerning the confusion and improperly translated rights and waiver of rights forms (incorrect Khmer translation of [petitioner's] rights) coupled with inadequate and incorrect explanations of [petitioner's] rights given by the overbearing interrogating police officer were never addressed by the trial court (#7, Ex. E at 17);

> ·    The Trial Court wrongfully allowed a police report into evidence which allegedly contained statements of witness Thethbun (who did not testify at trial)(#7, Ex.

---

[6]    Petitioner argues that given the page limit for an ALOFAR, he was unable to include all of the grounds he wanted to in his ALOFAR. Thus, says petitioner, the Court in deciding whether an issue has been exhausted should consider the brief he filed with the Appeals Court. (#10 at 3) However, to do so would be contrary to established habeas law. It is axiomatic that "an appealed issue cannot be considered as having been fairly presented to the SJC for exhaustion purposes unless the applicant has raised it within the four corners of the ALOFAR." *Mele v. Fitchburg Dist. Court*, 850 F.2d 817, 823 (1988). The *Mele* holding was recently reaffirmed in the case of *Josselyn v. Dennehy*, 2007 WL 121994,*2 (1 Cir., Jan. 19, 2007).

E at 18);

- The Appeals Court neglected to address the issue...that the totality of the circumstances which occurred from the arrest to sentencing warrant [petitioner] receiving a new trial (#7, Ex. E at 24);

- the Home Invasion Statute 265 18(C) is unconstitutionally vague and violates [petitioner's] rights pursuant to Article 12 of the Massachusetts Constitution and the 14th Amendment of the United States Constitution, and...the penalties of the statute and the sentence imposed on the [petitioner] constitute cruel and abusive punishment pursuant to Article 26 of the Massachusetts Constitution and the 8th and 14th Amendments of the United States Constitution (#7, Ex. E at 25).

In comparison, the claims in the current habeas petition are that:

- Petitioner did not make a knowing, voluntary and intelligent waiver of his Miranda Rights and other rights regarding self incrimination, right to legal counsel and right not to be questioned for lengthy periods while in custody and under duress;

- Trial Court allowed a highly prejudicial police report (witness statement) into evidence;

- The totality of the facts and circumstances were against the weight of the evidence;

- Petitioner asserts that the Massachusetts Home Invasion Statute is unconstitutional. It is overly broad, vague and has repeatedly been criticized by Trial Courts, prosecutors, defense attorneys, Appeals Courts

and the Supreme Judicial Court of Massachusetts as a
problem statute.

It is clear that the claims presented to the SJC and those included in the
current petition are similar, but they are not identical such that all of the claims
in the current habeas can be said to have been exhausted. Respondent asserts
that there are three issues that are unexhausted–petitioner's claim in Ground 1
of his petition that he did not waive "other rights regarding self-incrimination,
right to legal counsel and right not to be questioned for lengthy periods while
in custody and under duress"; the claim in Ground 2 that the trial court "refused
to allow into evidence that co-defendant was acquitted of all charges"; and, the
claim in Ground 4 that the Massachusetts Home Invasion Statute is
unconstitutional because it is overbroad.

A. *Waiver of rights (Ground 1)*

Although petitioner did claim in his ALOFAR that he did not voluntarily
waive his Miranda rights, according to respondent, petitioner never mentioned
in his ALOFAR the failure to waive other rights, such as the right to legal
counsel and the right not to be questioned for lengthy periods while in custody.
In the instant petition, petitioner clearly addresses the failure to waive rights
other than just the Miranda right. Thus, says respondent, part of Ground 1 is

unexhausted, and the petition is subject to dismissal.

Petitioner, however, contends that in his petition he did "reference Federal deprivations contrary to the United States Constitution...." (#10 at 2) As support, petitioner relies on *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) supposedly for the proposition that a prisoner may obtain habeas relief "[d]espite the lack of specifics and perfect language." (#10 at 2)(citing *Hamdi*, 542 U.S. 507). *Hamdi*, a case dealing with holding a United States citizen in indefinite custody as an enemy combatant, actually held that "a citizen-detainee seeking to challenge his classification as an enemy combatant must receive notice of the factual basis for his classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker." 542 U.S. at 532. In short, the *Hamdi* court was saying that under certain circumstances, a prisoner held as an enemy combatant may have the right to seek habeas relief, a decision that has no bearing on petitioner in the instant case.

While it is true that a petitioner need not use the "perfect" language or even cite Supreme Court law in his petition, petitioner must alert the state court to the presence of a federal issue and must squarely present the issue to the state court in order that the issue can be exhausted. Upon review of the

ALOFAR in this case, it is a close call as to whether petitioner presented the issue of the waiver of rights other than the Miranda right.  However, viewing the ALOFAR in its totality, it seems that petitioner did include the waiver of other rights, at least the Rosario right.  Although the petition is not skillfully worded or particularly clear, petitioner does alert the Court that he is contesting the voluntariness of his waiver of Miranda as well as the right not to be questioned for lengthy periods while in custody and under duress.  (*See* #7, Ex. E at 10-13, 17) Therefore, the Court holds that Ground 1 has been exhausted sufficiently.[7]

   B.  *Court's failure to admit evidence (Ground 2)*

   Respondent argues that Ground 2 is not exhausted because it contains an issue that was not included in the ALOFAR, to wit, that the trial court refused to allow into evidence that petitioner's co-defendant was acquitted of all charges. (#7 at 9)  Respondent is correct that this issue was not addressed anywhere in the ALOFAR.  Indeed, in making the argument that exhaustion was accomplished by raising the issue before the Appeals Court,[8] petitioner himself

---

[7]

The right against self-incrimination and the right to legal counsel are subsumed in the Miranda right.

[8]

*See* footnote 6, *supra.*

16

concedes that Ground 2 was not presented to the SJC.

Petitioner argues that "[b]ecause the Supreme Judicial Court refused to grant review of the petitioner's claims to the highest court...the petitioner asserts that his failure to raise this particular issue in his request for further appellate review...does not foreclose the matter." (#10 at 3)  Petitioner misses the point – even if the SJC decides not to grant further review, an issue still must have been included in the ALOFAR to be considered exhausted for habeas purposes.  Thus, there can be little debate that Ground 2 is unexhausted since it contains an issue that was never advanced to the SJC.

C.  *Overbreadth (Ground 4)*

As part of Ground 4 of the petition, petitioner charges that the Massachusetts Home Invasion statute is "overly broad" and "vague."  While petitioner did present the SJC with the issue of this statute being vague, he never raised the issue of the statute being overbroad. This may appear to be a distinction without a difference.  However, the concepts of vagueness and overbreadth are discrete:

> While related, [the doctrines of overbreadth and vagueness] derive from somewhat different policies and look to different effects. Overbreadth analysis looks to whether a law "sweeps within its ambit

(protected) activities" as well as unprotected ones, while a vagueness inquiry focuses on whether a law states its proscriptions in terms sufficiently indefinite that persons of reasonable intelligence "must necessarily guess at its meaning."

*Fantasy Book Shop, Inc. v. City of Boston,* 652 F.2d 1115, 1122 n. 9 (1 Cir.,1981) (citations omitted).

The difference in the two doctrines was stated by Justice Marshall in *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 497, 102 S.Ct 1186, 1192, 71 L.Ed.2d 362 (1982):

A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process....

An "overbreadth" challenge should not be confused with one based on "vagueness," though a challenger will often assert both grounds of invalidity....[A] statute can be quite specific–*i.e., not* "vague"–and yet be overbroad.

*United States v. Morison*, 844 F.2d 1057, 1070 n. 19 (4 Cir.), *cert. denied*, 488 U.S. 908 (1988).

Thus, it is quite apparent that a challenge based on vagueness is different than one based on overbreadth. Nowhere in petitioner's ALOFAR does he raise the issue of the Home Invasion statute being overbroad although he does discuss at length the issue of the statute being vague. (*See* #7, Ex. E at 25-28)

Petitioner, however, argues that the issue nevertheless should be considered exhausted because it should be sufficient that he was challenging the overall constitutionality of the statute to the SJC because the SJC was likely alerted to the federal nature of the claim. (#10 at 5-6) Petitioner's position is unsupportable because it is well-established that "fair presentation requires that the constitutional analysis necessary to resolve the ultimate question posed in the habeas petition and in the state court proceedings, respectively, be substantially the same." *Scarpa*, 38 F.3d at 6. As explained above, the constitutional analysis for an overbreadth claim is quite different than the analysis for a vagueness challenge. Put in simple terms, the SJC never had the chance (even had it wanted) to address the overbreadth issue. There is nothing in the ALOFAR which even hints at an argument that the statute criminalizes protected activities. Thus, it cannot be said that petitioner fairly presented the overbreadth claim to the SJC; indeed, he did not present it at all.

Although this Court could choose to recommend denial of the petition on the merits despite the presence of the unexhausted claims, it shall not do so. *See* 28 U.S.C. § 2254 (b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the

remedies available in the courts of the State."). Thus, at this juncture, the Court

shall recommend only that the unexhausted claims be addressed by petitioner,

either by a voluntary withdrawal of the claims or by a motion that action on the

petition be stayed so that he may seek to have the state courts address the

unexhausted claims. However, if he chooses the latter route, he must satisfy the

requirements for a stay as set forth in the case of *Rhines v. Weber,* 544 U.S. 269

(2005).

> Thus, to obtain a stay of a mixed petition, the
> petitioner must show that there was "good cause" for
> failing to exhaust the state remedies, the claims are
> potentially meritorious, and there is no indication that
> the petitioner engaged in intentionally dilatory tactics.

*Josselyn v. Duncan,* 2007 WL 121994,*3 (1 Cir., Jan. 19, 2007) citing *Rhines,*
544 U.S. at 278.

### IV. Recommendations

For the reasons stated, I RECOMMEND that petitioner be given a period

of THIRTY (30) days to file and serve a pleading in which he either (1)

withdraws his unexhausted claims (Ground 2 and that portion of Ground 4

alleging that the Home Invasion statute is overbroad)[9] or (2) seeks to stay the

---

9

If petitioner chooses this option and elects to have the Court at this time proceed in this case only
with his exhausted claims, the unexhausted claims could not later be pursued in a federal habeas action.
They would be time-barred under § 2244(d). In other words, if petitioner exercises this option, he would,
in essence, be waiving any future claim to relief in the form of a writ of habeas corpus on the basis of the

instant petition in accordance with the procedures set forth in the *Rhines* case and by making the showing required by the *Rhines* case. If petitioner neither withdraws the unexhausted claims nor requests a stay within the time which the Court specifies, I FURTHER RECOMMEND that the Petition be DISMISSED.

## V. Review by the District Judge

The parties are hereby advised that pursuant to Rule 72, Fed. R. Civ. P., any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford*

---

unexhausted claims which he withdraws.

*Motor Co.,* 616 F.2d 603 (1 Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Robert B. Collings

ROBERT B. COLLINGS
United States Magistrate Judge

January 25, 2007.