circumstances of the alleged confession it is more likely than not that the defendant did

not knowingly, voluntarily and intelligently waive his rights, especially when the

presumption is against waiver. <u>Johnson,</u> supra.  Defendant's conviction should be

reversed accordingly.

**GROUND 2**

**<u>Petitioner asserts that it was error for the Trial Court (upheld by the the reviewing
court) to  allow a highly prejudicial police report(witness statment) into evidence.</u>**

Defendant asserts that it was an error for the Court to allow into evidence the statement

allegedly given to police by Ronny Thethbun February 9, 1999.  (See Exhibits.)  Ronny

Thethbun was allegedly one of the victims, but did not testify at defendant Sok's trial,

due to a medical condition.  (Day 4, pg. 77.)  Defense counsel objected to the

admission of her statement made to the police, taken on February 9, 1999.  (Day 4, pg.

99.) (Marked Exhibit "11" in the trial).

Defense counsel did not object to the prior trial testimony given by Ronny

Thethbun at defendant Prum's trial, but did object to the police report that was prepared

by Officer Conroy and which was allegedly a statement voluntarily made by Ronny

Thethbun.  (Day 4, pg. 72, 73.)  The Court, after listening to both the prosecution and

defense arguments, allowed into evidence the trial transcript testimony of Ronny

Thethbun  finding that it had been made during the course of a previous trial where

Ronny Thethbun was sworn and was subject to cross examination.  (Day 4, pg. 79.)

However, defense counsel objected not to her prior trial testimony, but rather to

the written statement which Ronny Thethbun had allegedly voluntarily given the police,

21

prior to defendant Sok's arrest. (Day 4, pg. 99.) The Court allowed the statement to come in on the basis that Ronny Thethbun had made some references to the written statement during the trial of defendant John Prum, even though the Court acknowledged that it was never established whether the previous statement to the police was true. (Day 4, pg 81.) Defense counsel objected as to Ronny Thethbun's alleged voluntary written statement to the police coming in as evidence, because that statement was never subjected to cross examination. (Day 4, pg. 82.) The Trial Court stated if the previous trial transcript of Ronny Thethbun was to come in as evidence, then she was also going to allow the alleged voluntary written statement that Ronny Thethbun made to the police. (Day 4, pg. 79-84.)

It was error for the Court to allow the written statement to come in as evidence because the written statement was not testimony that was subject to cross examination. Furthermore, defense counsel, in the case of John Prum, clearly had a different strategy than defendant Sok's defense counsel. Prum's attorney wanted only to show that John Prum was not one of the alleged robbers. The motive and strategy of defense counsel in the first trial was at complete odds with the motive and strategy at defendant Sok's trial. In essence, Ronny Thethbun's alleged voluntary statement to the police supported defendant Prum's position, therefore it would not make sense for Prum's defense counsel to try to impeach Ronny Thethbun on statements that were consistent with his theory of defense. In any event, the written statement itself was not made under conditions which allowed for cross examination, but rather was a statement written by the police and signed by Ronny Thethbun without any input or cross examination from any defense counsel.

The statement given to the police by Ronny Thethbun is suspect and unreliable for numerous reasons.  First of all, it was never established in the trial of John Prum that Ronny Thethbun's alleged voluntary statement given to police was true and accurate.  Secondly, Ronny Thethbun used an interpreter at trial and likewise allegedly used an interpreter when she gave the statement to the police.  There were no qualifications specified as to the interpreter who allegedly translated the statements that she allegedly made to the police at the time of her alleged written statement. Therefore, there is a question as to whether or not what was said to her and what she said and what she later signed had been properly interpreted.  The next problem with the statement is that the statement was not under oath, nor signed under the pains and penalties of perjury.  The most serious problem with the statement is that it was not subject to cross examination at the time it was made. In essence, Ronny Thethbun did nothing more than sign her name to a piece of paper that the police had prepared. Defense counsel was completely deprived of challenging under what conditions Ronny Thethbun signed this statement including having the opportunity to inquire and challenge whether or not she signed the statement voluntarily; whether she understood what she was signing; whether she was in a mental and physical condition to be able to properly reflect on the accurateness of the statement, both at the time of the incident and the time at the time she made the statement;  and whether or not officer Conroy suggested the content of her statement. In essence, defense counsel had no way of challenging this written statement, because he had no one to cross examine as Ronny Thethbun did not appear at defendant Sok's trial.  Given the fact that the statement itself had not been even verified by Ronny Thethbun and she had not been subject to

23

cross examination at the time she made that particular written statement, if in fact she did make that statement, clearly the trial judge should have excluded it. An essential right protected by the confrontation clause of the United States Constitution and by the Constitution of the Commonwealth of Massachusetts, requires the right of cross examination.  See <u>California v. Green</u> 399 U.S. 149 (1970).  For prior testimony to be admissible it must have been given in a proceeding addressed to substantially the same issues as in the current proceeding with reasonable opportunity and similar motivation on the prior occasion for cross examination of the declarant by the party against whom the testimony is now being offered.  <u>Commonwealth v. Prigones</u> 397 Mass. 633, 638 (1986).  When cross examination has been denied and the prior testimony admitted, then the reversal of a conviction is required unless the error was harmless beyond a reasonable doubt.  The prosecution bears the burden of proving that the admission of the uncross-examined testimony was not a substantial factor in the jury's decision to convict.  <u>Commonwealth v. DiBenedetto</u> 413 Mass. 37 (1992) Clearly, the jury could have concluded that because Ronny Thethbun's statement was given shortly after the alleged incident, then it would have been more reliable than her trial transcript in the case of John Prum of what happen.  In fact, this was the reasoning that the prosecutor asked the jury to adopt in coming to its conclusion as to which of Ronny Thethbun's versions that they should believe.  (Day 4, pg. 165.)  What the jury did not know and could not properly evaluate, in accordance with the defendant Sok's Constitutionally protected rights of cross examination and confrontation protected rights, was the truthfulness, the accuracy and voluntary nature of her statement which was

24

prepared by the police.  The Court, in allowing such an unreliable and unchallenged statement to be examined and considered by the jury, clearly and unfairly deprived defendant of his right of confrontation as guaranteed by the respective Constitutions.

The fact that there was no physical evidence which connected defendant Sok to the crime means that the jury could only convict on the testimony of the witnesses. The Commonwealth did not have and did not introduce any of the alleged  stolen property, nor the gun which was allegedly used by Sok, nor any fingerprint evidence of any kind to support any testimony that Sok was ever in the victim's apartment, nor any other physical evidence which directly linked defendant Sok to the allegations against him. Clearly the impermissible police prepared hearsay statement of Ronny Thethbun unfairly prejudiced defendant Sok.  Without Ronny Thethbun's statement prepared by the police being allowed into evidence, Ronny Thethbun would have been a very important and strong witness for defendant Sok.   The Trial Judge herself acknowledged that by allowing the unsworn, unchallenged statement given to police by Ronny Thethbun that it would in effect nullify her very helpful testimony regarding Sok which she gave at  John Prum's trial and which was read into evidence at Sok's trial. *The Court:* It seems to me the obvious answer for the jury to draw is you can't believe any version, and therefore I think this is probably not a very useful exercise". (Day 4, pg. 79.)

Without the police prepared statement of Thethbun, that the trial court improperly allowed into evidence, Ronny Thethbun's trial testimony, which she gave at Prum's trial would have undoubtedly been considered in a completely different light and certainly could have cast reasonable doubt on the entire convoluted arrest of Loeurth Sok.

Likewise, it would have further called into question the police methods and tactics used by Officer Conroy in obtaining Sok's confession. Ronny Thethbun was a particularly important witness from defendant's Sok point of view because officer Conroy had used her as an excuse and a reason for allowing so much time to go by before he arrested Sok.  He claimed that he waited on the arrest of Sok because he first wanted to talk to Ronny Thethbun. (Day 3, pg. 95-102.)   Clearly it would have further called officer Conroy's credibility more  into question, which was the main strategy of the Sok's defense.  It is noteworthy that Ronny Thethbun did provide live testimony at John Prum's trial and of course was cross examined as evidenced in the transcript (Trial Exhibit 9) and Prum was acquitted. (Appendix, pg. 22-24 and 25.)

As to this issue the reviewing court stated " The Commonwealth, apparently seeking to impeach her credibility, sought to introduce a signed statement that Tethbun had given to police. This was proper. See Commonwealth v. Pina, 430 Mass.66, 75-76 (1999); Commonwealth v. Mahr, 430, Mass. 643, 648-650 (2000).

Defendant asserts that the Appeals Court did not adequately address or remedy  the complete wrongful denial of the defendant's Constitutional right of confrontation guaranteed by the Article 12 of the Constitution of the Commonwealth and as required by the Sixth Amendment of the U.S. Constitution.  The right to confront one's accusers is a concept that dates back to Roman times.  Coy v. Iowa 487, U.S. 1012, 1015 (1988).  Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with a jury trial because a defendant is obviously guilty.  This is not what the Sixth Amendment prescribes.  Crawford v. Washington 541 US 36 (2004).   The Trial

Court wrongfully allowed a police report which allegedly contained statements of concerning witness Tethbun, (who did not testify at trial). The Appeals Court ruled that because the statement was allegedly used to impeach Tethbun that it was properly admitted.  The Appeals Court cited case law in support of its position.  However, defendant asserts that there are significant differences in the cited cases and, regardless, a defendant's Constitutional Rights cannot be usurped by a rule of evidence Crawford v. Washington 541 U.S. 36 (2004).  The Appeals Court cited the case of Com v. Pina 430 Mass. 66, 75-76 (1999).  But in that case the prior inconsistent statement was admitted as an exception to hearsay, as a statement against penal interest. Additionally, at the Pina trial the person who testified as to the inconsistent statement was available for cross examination.  Clearly that was not the case with the police report introduced into evidence in Sok's trial.  Tethbun's police prepared written statement constituted prejudicially charged accusations against Sok.  There is no similarity of facts between these two cases.

The Appeals Court also cited the case of Com v Mahar 430 Mass. 643, 648-650 (2000).  In that case it was the defendant who sought to introduce a prior inconsistent statement which the trial court excluded. There was no confrontation issue in that case because it was the defendant who wanted the court to allow introduction of the impeachment evidence against a Commonwealth witness.

Also in Mahar the witness (whom the impeachment evidence was being offered) had actually testified at the trial.  In Sok's trial neither the Trial Court nor the Commonwealth stated the grounds under which the police prepared hearsay statement of Tethbun was admissible. The cases cited by the Appeals Court made reference to Federal Rule of

Evidence 806.  But the Advisory Committee's Notes explain if any evidence is admitted

for the purpose of impeachment then it still must have a significant indicia of reliability

such as a dying declaration or deposition testimony where there has been cross

examination or at least the opportunity for cross examination.  Impeachment by prior

inconsistent statement may not be permitted where employed as a mere subterfuge to

get before the jury evidence not otherwise admissible.  <u>United States v. Morlang</u> 531 F.

2nd 183 (4th Cir. 1975) cited in <u>Com v. Benoit</u> 32 Mass.App.Ct. 11, 116-117.

It was also improper to admit the police prepared statement of Tethbun because

the statement contained information which went far beyond the limited impeachment

topic.  The police prepared statement of Tethbun contained a lot of other information

that was improperly prejudicial and not specifically in response impeaching her

testimony from the Prum trial offered by Sok at his trial.  The notion of allowing limited

hearsay impeachment evidence cannot be used as a funnel to admit whatever

damaging and unreliable hearsay evidence that the Commonwealth seeks to introduce.

The Framers would be astounded to learn that ex parte testimony could be admitted

against a criminal defendant because it was elicited by "neutral" government officers

<u>Crawford</u> supra at 31. Even if the trial court had given a proper instruction that

Tethbun's police report could only be used as impeachment evidence and not

substantive evidence, limiting instructions are inadequate where the danger of prejudice

is great and "it is simply unrealistic" to believe that the jury would adhere to the "refined"

distinctions demanded by the limiting instructions <u>Com v. Bond</u> 17 Mass.App.Ct. 396,

400 (1984).

28

The confrontation clause imposes two requirements on the states use of prior reported testimony against a criminal defendant.  Ohio v. Roberts 448 US 56,65 (1980); Com v. Siegfriedt,402 Mass 424,427(1988) Com v. Bohannon 385 Mass. 733, 741 (1982). *Liacos* seventh edition 8.7.2  First, the witness must be shown to be unavailable Defendant asserts that the Commonwealth did not sustain its burden as to unavailability but instead only offered an oral explanation with no supporting documentation such as subpoenas with a return of service or medical documentation evidencing that Tethbun could not testify

The test for reliability requires first, that the testimony be shown to be reliable when given, and second that the testimony was accurately preserved. Com v. Siegfreidt supra, 402 Mass. at 428.  The essential right protected by the confrontation clause, and on which the reliability of testimony depends, is the right of Cross examination. California v. Green 399 US 149 (1970): *Liacos* Seventh Edition ¶8.7.2. Commonwealth v. Trigones 397 Mass. 633, 638 (1986).  Where cross examination has been denied and the prior testimony admitted, a reversal of a conviction is required unless the error was harmless beyond a reasonable doubt.  The prosecution bears the burden of proving that admission of uncross examined testimony was not a substantial factor in the jury's decision to convict.  Com v. DiBenedetto 413 Mass. 37 (1992).

In recent cases where Police reports have been in admitted into evidence the Appellate Court and Supreme Judicial Court has reversed the convictions.  See Com v. Given 59 Mass.App. Ct. 390, (2003). In reversing the defendants conviction in that case the court stated that it could not be sure that the inadmissable police report had no or

29

very slight influence on the verdict of the jury. Citing <u>Com v. Bladsa</u>, 362 Mass. 539, 540 (1972).  The courts strongly disfavor police reports coming into evidence even in Probation Revocation Suppressions where there was not an opportunity for any cross examination concerning the police report. <u>Com v Negron</u> SJC Docket No. 09044 May 14, 2004. In a further explanation of whether Police reports are considered testimonial the Supreme Judicial Court Stated that the reports will be considered testimonial when the circumstances objectively indicate that there is no such on going emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecutions. <u>Davis v. Washington</u> 547 U.S.____,126 S. Ct. 2266 (2006).  Clearly in Sok's case there was no emergency as he was in custody and the Police were investigating the case at their leisure.

In reversing the Supreme Judicial Court of Washington's ruling, which allowed a witness tape- recorded statements to the police as evidence that defendant Crawford stabbing was not in self-defense the U.S. Supreme Court held the only indicum of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes  confrontation <u>Crawford v. Washington</u> 541 U.S. 36 (2004).

  The highly damaging police report entered into evidence in defendants Sok's case was there for the jury to repeatedly read.  The report contained all kinds of information that went far beyond scope of impeachment.  The defendant was wrongfully denied his constitutional right to confrontation and the only justifiable remedy is to vacate his conviction.

**GROUND 3**

### The totality of the facts and circumstances were against the weight of the evidence .

Defendant also asserts that the Court should have granted defendant's Motion for a Required Finding of Not Guilty on the indecent assault and battery charges as there was no evidence to support a conviction beyond a reasonable doubt.  (Day 4, pg. 152 and Trial Court's Disposition, Day 4, pg. 35, 36.)  The Court acknowledged that there was no evidence of sexual gratification.  (Day 4, pg. 33-36.)

Defendant asserts that in consideration of the totality of circumstances in this case that the verdict was clearly against the weight of the evidence.  One or more of the enumerated factors below could be a reason to vacate the convictions against Louerth Sok.  When all of the factors are considered it becomes obvious that the verdict was against the weight of the evidence.

1. Sok's involuntary waivers.  (Day 3, pg. 279-288.)

2. His involuntary confession.  (Day 3, pg. 279-288.)

3. The denial of his right to confront and cross examine key witness Ronny Thethbun as to her prior inconsistent statements.  (Day 4, pg. 77-89.)

4. The complete change in position by witness Sokha Tath, who gave statements to the police that Sok and Prum were undoubtedly involved in the crime and likewise testified before grand jury and at suppression hearing, that undoubtedly  Prum and Sok were the perpetrators and then in Prum's trial completely changed his account and said he did not think

Prum was involved.  (Day 4, pg. 189.)

5.    The fact that no person mentioned to the Police that Sok was involved until the police "re-interviewed" the victims  with police composite photos, where at least one witness stated that the photo was circled prior to her seeing it.  (Day. 1, pg. 225; Day 2, pg. 15; Day 4, pg. 60, 61, 97.)

6.    The bizarre behavior by the victims in first calling Sok's sister to help translate the incident to the police, knowing that Sok lived with her.  Nor did the English speaking Sokha Tath, or any of the other witnesses relate through any of the other translators when the police first arrived on the scene, that Loeurth Sok was involved.  (Day. 1, pg. 49, 50; Day 3, pg. 216.)

7.    The victims/witnesses joking and working with Sok after the alleged incident without mentioning his involvement  to anyone until being "re-interviewed".  (Day 1, pg. 176.)

8.    The fact that the witnesses claimed they recognized Sok because he, for some inexplicable reason, allegedly  pulled his mask up for two seconds.  (Day 2, pg. 47, 107.)

9.    The fact that there was no physical evidence which linked Sok to the crime in any way, no fingerprints, gun, jewelry, or anything else.  (See Trial Exhibits.)

10.   No testimony from any co-defendant that Sok was involved.

11.   No tape recording of Sok's alleged confession and no explanation as to why it was not recorded.  (See Trial Exhibits.)

32

12.    The fact that co-defendant John Prum, who was tried in a separate trial, was acquitted of all charges given the same testimony by the same witnesses, with the exception that the most helpful witness to Sok, Ronny Thethbun, could not testify in Sok's case because of medical reasons. (Day 4, pg. 96, 97, 189.)

The United States Supreme Court has stated that courts should indulge every reasonable presumption against waiver of fundamental constitutional rights <u>Johnson v. Zerbst</u> 304 U.S. 458,464 (1958) and that "every effort" must be made by police to see to it that the defendant did not unknowingly relinquish constitutional protections indispensable to a fair trial as required by <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218,242 (1973). Both the United States Supreme Court and the Courts of Massachusetts, are clearly aware at the frequency and problematic issues concerning so called eyewitness identification. See <u>Commonwealth v. Dougan</u> 377 Mass 303 (1979) and cases cited therein. The dangers of misidentification are well known and documented <u>Commonwealth v. Johnson</u>, 420 Mass 458,469 (1995).

Defendant's trial counsel filed a motion for required finding of not guilty as evidenced by the docket sheet (Day 4, pg. 177.) However, in deciding a motion for a required finding of not guilty, the judge does not properly exercise discretion concerning the weight or the integrity of the evidence, but instead assess the legal sufficiency of the evidence by the standard set out in <u>Commonwealth v. Latimore,</u> 378 Mass 671,677 (1979). A court has discretion to award a new trial on the ground that the verdict, although supported by legally sufficient evidence, was against the weight of evidence. <u>Commonwealth v. Preston</u>, 393 Mass 318, 324 (1984), or because its integrity was

33

suspect. <u>Commonwealth v. Cornish</u> 28 Mass. App. Ct. 173,177-178 (1989).

There were so many oddities and highly questionable and suspect facts and circumstances from the time of Sok's arrest and up to and including his sentencing, that the convictions cannot withstand the strict standards of integrity as required by the Constitution of the Commonwealth of Massachusetts and the United States Constitution, as interpreted by the respective courts. The United States Supreme Court has also stated that the totality of circumstances is an important consideration in determining whether constitutional rights have been violated. <u>Foster v. California</u> 394 U.S. 440 (1969)" I do not deny that the "totality of circumstances" can be considered to determine whether some specific constitutional prohibitions have been violated...." dissent of Justice Balck at 448.

## GROUND 4

**<u>Petitioner asserts that the Massachusetts Home Invasion Statute is unconstitutional.  It is vague  and has repeatedly been criticized by the Trial Courts, prosecutors, defense attorneys, Appeals Courts and The Supreme Judicial Court of Massachusetts as a problem statute.</u>**

The standard of review in the instant case is set forth in <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983) wherein the Court articulated the standard by stating that a statute, "…define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."

The Home Invasion Statute, *Massachusetts General Laws Chapter 265, Section 18 (C),* as drafted, is so vague as to render it unintelligible. The rules of statutory

34

construction require that the statute be construed in accordance with its plain meaning. See. M.G.L. c. 4, §6 (3). In the instant case, the statute in question, is so convoluted in its construction as to make it extremely ambiguous, incoherent and defiant of clear common sense interpretation. As noted in the Brown decision, Commonwealth v. Brown, 431 Mass. 722, 780 (2000), " …the statute with the amendment is too lacking in coherence to be the basis of the defendant's position." The incongruity of the imposition of a lesser penalty for a more serious offense (home invasion by one armed with any sort of firearm) obviates the incoherence and vagueness of the statute. Moreover, the apparently dangling sentence making reference to the imposition of a minimum sentence of ten years, when placed in juxtaposition with the language allegedly setting a minimum mandatory penalty of twenty years, further exemplifies the incoherence and vagueness of the statute. This is even more evident by the recent case of Commonwealth v. Berte 57 Mass.App.Ct. 29 (2003). This case acknowledged that even tough it made absolutely no sense to incarcerate a person without a firearm for a much longer period of time than a person who committed home invasion with a firearm, that is what is required by the statute. This is in direct conflict with common sense and with the lengthy and well reasoned case of Commonwealth v. Brown 47 Mass.App.Ct. 616 (1999). The thorough analysis by the court reasoned why a person convicted with possession of a firearm (including an assault weapon) should be subjected to a harsher penalty than a person who threatens another with a shod foot, cell phone or anything else that can be used as a dangerous weapon.

The following scenarios are altogether plausible, and indicative of the absence of clarity of said statute when applied.

1)      A person is present in a dwelling of another, with others present, for the purpose of engaging in a game of cards. During the course of the card game tempers erupt as a result of an error made by one of the participants.  The visiting friend who was participating in the card game gets angry, leaves and then comes back and threatens to kick one of the other participants with a shod foot, but subsequently leaves and causes no one any harm. Under the current statute this is home invasion.

2)      An armed police officer enters the dwelling place of another, without a warrant, and without legal justification and encounters one of the dwellers who challenges the officer and the officer threatens the dweller not to interfere with his search or officer's presence in the dwelling.  Note, whether a police officer forcibly enters a dwelling of another in the mistaken belief he has the right to search, or enters the dwelling or in disregard of search and seizure laws, the officer has engaged in conduct which constitutes "home invasion" under the current statute.

3)      A husband and wife, or significant others, have separated or, similarly a roommate or child moves out of a dwelling, the estranged  spouse or significant other, departed roommate or child, forcefully enters the dwelling of the other after moving out to retrieve a pet, a child's toy, tax returns, or other objects.  The person occupying the dwelling is present and the one who enters says give me back whatever, or I will kick you with my boot or hit you with my cell phone, coffee pot etc.  Even if the one who enters decides to retreat, and no harm is done to anyone, if charged and convicted under the statute he/she must serve a minimum of 20 years and up to life if any

36

sentence of incarceration is imposed for an incident that occurred in a moment of frustration or anger where no one was hurt.

4)    An uninvited guest forces his way into a frat party that is held at an individual's home.  He threatens those in attendance at the party with a beer bottle, spaghetti pot, etc.  He then leaves without injuring anyone.  He has just committed home invasion and if convicted and incarcerated he must serve a minimum sentence of 20 years.

5)    A neighbor wrongfully assumes that his neighbor's house is being robbed because he hears someone inside his house.  He grabs his baseball bat and kicks open the door.  A man is standing inside going through some of the dresser drawers in the bedroom. Neighbor shouts to the man if you move I will break every bone in your body.   The neighbor never had permission to enter the house.  Whether the man inside is a burglar, or the owner's brother who has come to town to stay for a few days, the intruding neighbor has committed a "home invasion" and must be incarcerated for no less than 20 years.

Note, there is no requirement in the home invasion statute that the individual threatened or harmed, owned the home or dwelling, lived there, or even had a right to be in the home or that the "invader" had ay criminal intent.  Commonwealth v. Mahar, 430, Mass. 643, 652 Footnote 4.

To assume that the police and/or the prosecutors will not charge someone " if appropriate" (even though all the above fact patterns fit squarely within the requirements of the Home Invasion Statute) leaves much more selection and discretion to those in power than our forefathers who drafted our state and federal constitutions

37

ever intended to give them.

It is improper to assume that the police prosecutors and courts will somehow make the Home Invasion Statue and it's butchering of Constitutional rights equitably work in a consistent manner when applied to a minority in all white neighborhood or a Harvard Graduate Student at a frat party.  Too much is at stake, a life sentence, even though no touching or injury occurs.  If one adopts the philosophy that it is for the charging authorities and the courts to bring the statute  in proper perspective, then why not just mandate life sentences for all crimes, it would be much simpler.

Notwithstanding the findings in <u>Commonwealth v. Dunn</u>, 43 Mass. App.Ct. 58 (1997), the appellant herein asserts that strict construction of the statute, especially in light of the 1998 amendment, see St. 1998, c. 180, §57, renders the statute impermissibly vague. By the addition of language referencing the firearms and the inclusion of language relative to the penalty imposing a 20 year sentence for the use of said weapons, together with the rather mysterious inclusion of the sentence referencing the potential reduction of the sentence to 10 years, it is the contention of the appellant that the statute has been rendered vague within the meaning of <u>Commonwealth v. Williams</u>, 395 Mass. 302, 303 (1985).

Contrary to the finding of the Supreme Judicial Court in Brown that, "…the incongruity in the amendment does not persuade us to adopt a strained reading", see id. at 781, the appellant herein asserts that this statute is so vague and convoluted that the Court can make no other reading than a strained twisted and illogical interpretation no matter how it approaches the statute.

38

The appellant herein further directs the Court to take notice of the decision set forth in <u>Commonwealth v. Berte</u>, 57 Mass.App.Ct.29, 35 (2003) in which the Court, reading the same statute and adverting to <u>Brown</u>, arrived at an altogether different conclusion with respect to the imposition of a minimum sentence of ten years. Despite offering deferential language regarding the legislative intent in the drafting of this statute, see id. at 33, the Appeals Court raises the specter of having to guess as to the intent of the legislature regarding it's intention concerning the length of sentence to be imposed under a conviction pursuant to this statute.

As to petitioner's Home Invasion challenge the reviewing court held " *The home invasion statue is not unconstitutionally vague and does not impose cruel and unusual punishment for the crime of home invasion. <u>Commonwealth v. Dunn</u> Mass App Ct. 58, 65(1977). <u>Commonwealth v. Berte</u> 57 Mass App. Ct. 29 (2003). Further the trial judge did not have the option to sentence the defendant to probation or a suspended sentence. See <u>Commonwealth v. Berte</u>, supra. However as in Bert,supra at 35 " the sentence on the conviction for home invasion committed with firearm is vacated, and the case is remanded for sentencing on this count with a maximum sentence not to exceed twenty years, and a minimum sentence of ten years imprisonment.*

The history of the statue in Massachusetts Laws Annotated is as Follows:

Chapter 265: Section 18C. Entry of dwelling place; persons present within; weapons; punishment
M.G.L.A. 265 § 18C
Massachusetts General Laws Annotated Currentness
Part IV. Crimes, Punishments and Proceedings in Criminal Cases(Ch. 263-280)

39

Title I. Crimes and Punishments (Ch. 263-274)

+ Chapter 265. Crimes Against The Person (Refs & Annos)

>>§ 18C. Entry of dwelling place; persons present within; weapons; punishment

Whoever knowingly enters the dwelling place of another knowing or having reason to know that one or more persons are present within or knowingly enters the dwelling place of another and remains in such dwelling place knowing or having reason to know that one or more persons are present within while armed with a dangerous weapon, uses force or threatens the imminent use of force upon any person within such dwelling place whether or not injury occurs, or intentionally causes any injury to any person within such dwelling place shall be punished by imprisonment in the state prison for life or for any term of not less than twenty years.

CREDIT(S)

Added by St.1993, c. 333. Amended by St.1998, c. 180, § 57; St.2004, c. 150, § 17, eff. Sept. 13, 2004.

HISTORICAL AND STATUTORY NOTES

2007 Electronic Update.

2004 Legislation

St.2004, c. 150, § 17, approved July 1, 2004, effective Sept. 13, 2004, deleted the second to fifth sentences, which prior thereto read:

"Whoever commits said crime while being armed with a firearm, shotgun, rifle, machine-gun, or assault weapon shall be punished by imprisonment in the state prison for 20 years. Said sentence shall not be reduced to less than ten years nor shall the person convicted be eligible for probation, parole, furlough, work release or receive any deduction from his sentence for good conduct; provided however, that the commissioner of correction may, on the recommendation of the warden, superintendent or other person in charge of a correctional institution, or the administrator of a county correctional institution, grant to such offender a temporary release in the custody of an officer of such institution for the following purposes only: to attend the funeral of next of kin or spouse; to visit a critically ill close relative or spouse; or to obtain emergency medical services unavailable at such institution. The provisions of section 87 of chapter 276 relative to the power of the court to place certain offenders on probation shall not apply to any person 17 years of age or over charged with a violation of this subsection. The sentence imposed upon a person who, after having been convicted of violating any provision of this section, commits a second or subsequent offense under the provisions of this section shall not be suspended or placed on probation."

Emergency declaration by the Governor was filed Sept. 13, 2004.

1. Section 18C. Whoever knowingly enters the dwelling place of another knowing or having reason to know that one or more persons are present within or knowingly enters the dwelling place of another and remains in such dwelling place knowing or having reason to know that one or more persons are present within while armed with a dangerous weapon, uses force or threatens the imminent use of force upon any person within such dwelling place whether or not injury

occurs, or intentionally causes any injury to any person within such dwelling place shall be punished by imprisonment in the state prison for life or for any term of not less than twenty years.

The current home invasion statute which is in effect is the same statue that was in effect in 1993.  The Legislature changed the statue in 1998, the defendant was alleged to have committed the home invasion in 1999, then in 2004 the legislature reverted the statue back to the 1993 version.  In support of its determination that the Home Invasion statue was constitutional the Appeals Court for the Commonwealth i cited the case of Commonwealth v. Dunn 43 Mass App. Ct. 58,65 (1997).  However the statue was changed by the legislature in 1998 and therefore the analysis of the 1997  Dunn decision was inapplicable to the later enacted 1998 statute.  The Appeals court also cited the case of Commonwealth v. Berte, supra in support of finding that the statue was constitutional.

However the Berte Court acknowledged that the statute in essence was illogical because it imposed a harsher sentence on a person who used a firearm as compared to a weapon such as a frying pan or shod foot.

As the court noted in Brown, the 1998 amendment imposes a significantly lesser sentence (ten to twenty years, rather than twenty years to life) on what is intuitively a more serious crime (armed home invasion with a firearm, rather than with some presumably less dangerous weapon). While we might believe this to be indicative of legislative oversight, see id. at 781, the language of the statute is clear, see id. at 780 n.12, and we "will not interpret a . . . criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the Legislature] intended." Commonwealth v. Marrone, supra at 705, quoting from Ladner v. United States, 358 U.S. 169, 178 (1958). "We are not free to ignore or to tamper with that clear expression of legislative intent. If the law is to be changed, the change can only be made by the Legislature." Commonwealth v. Villalobos, **437 Mass. 797**, 804 (2002), quoting from Commonwealth v. Jones, **417 Mass. 661**, 664 (1994).  Berte at 33-34

The Berte court spoke to other portions of the statute

(c) *The defendant's assertions that the statute is inconsistent in its probation provisions also fail. The statute begins by prohibiting probation, goes on to prohibit probation for anyone over the age of seventeen, and concludes by prohibiting probation for repeat offenders.[8] At first glance, nothing more seems to be happening than a prohibition of probation, but the defendant claims that the additional provisos seem to allow probation in certain circumstances. We encourage the Legislature to examine this part of the statute and amend it if our interpretation does not comport with its intention, but we determine that the only rule to be gleaned from the statute as written is that probation is prohibited. It may not apply to those over age seventeen, nor to those who have committed a second offense under the statute, nor to anyone who is convicted of violating this law. See Commonwealth v. Villalobos, supra*   Berte at 34

Despite the language of the statue that permits probation the *Berte Court* seems to conclude that " probation is prohibited" but then goes on to say that it probation is prohibited  only to those over age 17, or those who committed a second offense.

 When the language of a statute is plain and unambiguous, it must be given its ordinary meaning. *Victor  v. Commonwealth*, **423 Mass. 793**, 794 (1996).  The statue clearly allows for probation yet for some reason the Appeals Court of Massachusetts states it does not.  Every word in a statue is there for a reason.  So why is the reference to and allowance of probation in the statue contained in the statue if it has no meaning.

It is interesting to note that the original home invasion statue did not mention or exclude the possibility of probation or parole.  The 1998 version attempted to address the issue but it was so confusing that the no one including the courts could rationalize the meaning.  So the legislature then went back to the 1993 version when it amended the statue in 2004.  Therefore the current version does not specifically  exclude parole or probation or allowing the defendant to plead to a continued without a finding (CWOF)as a sentence, all of which were confusingly addressed by the legislature in the 2004

42

version of the statute. Because criminal statues must be narrowly construed with all presumptions against interfering with a citizens liberty then under the current version of the statue and the 1993 version of the statute then the options for the sentencing judge would be to <u>continue the case without a finding</u> or probation ( as neither is expressly prohibited) or a mandatory minimum of 10 or 20 years depending under what time frame the crime was committed; and whether a gun was used for which the courts have determined a lesser sentence should be imposed as compared to using a weapon (such as a penknife) which is not a firearm for which a longer sentence is imposed.

If some of the best legal minds in the Commonwealth are struggling , with no success, to make logic and sense out of the statute, under which the defendant was convicted, then certainly an average citizen cannot begin to figure out the meaning of the statue and therefore it is unconstitutional. Fair notice of the implications of a statue require that the ordinary citizen can understand the meaning of the statute. *Lanzeta v. New Jersey* 306 U.S. 451,453 See also *City of Chicago* v. Jesus Morales 527 U.S. 41 (1999).

## CONCLUSION

The defendant has been unfairly deprived of his constitutional rights on many fronts. Each one of the grounds defendant has asserted are independently sufficient to warrant relief for the defendant. Defendant therefore requests that this honorable court grant him any and all relief for his benefit in accordance with the purpose for which Habeas Corpus relief was designed.

43

Loeurth Sok
by his attorney


_____/s/_____
David P. LiBassi
321 Central Street
Lowell, MA 01852
978-441-9339
BBO 547480


I certify that I have this day sent electronically and or by mail a copy of this pleading to opposing counsel of record Randall Ravitz, Attorney General's Office Criminal Bureau One Ashburton Place Boston, MA 02108.


_____/s/_____
David P. LiBassi


44