UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVILACTION NO:
05-11358-RGS

LOEURTH SOK,
    Petitioner

PETITIONER'S RESPONSE TO
OPPOSTION TO HABEAS RELIEF

KATHLEEN DENNEHY
    Respondent

### INSUFFICENCY OF THE APPEALLTE COURT IN EXAMING VIOLATION OF MIRANDA AND OTHER CUSTODIAL RIGHTS

The Appellate Court did not address the fact that some of the Petitioner's rights and waivers which were provided to the Petitioner in English, while some others were provided in both English and Khmer. If the arresting officer felt it was necessary to provide some of the waivers and rights in Khmer, then clearly, all of the notifications and waivers of Defendant's rights should have been provided in Khmer.

The Appellate Court did not adequately address Petitioner's confusion over misunderstanding his rights. The fact that an individual may appear to be able to respond to certain questions in a secondary language does not mean that he adequately understood what those rights meant, as explained in a secondary language. Additionally, The Trial transcript of the Motion to Suppress Hearing, evidenced that the Petitioner was not articulate and struggled to find proper English words and phrases to communicate his point of view.

The Appeals Court gave no indication that they indulged every reasonable presumption against Waiver of Fundamental Constitutional Rights as required. See Johnson v. Zerbst, 304 U.S. 458, 464 (1958). The Commonwealth could not prove that every effort was made to see to

it that the Petitioner did not unknowingly relinquish constitutional protection indispensable to a fair trial as required. See <u>Schnecklothv v. Bustamonte</u> 412 U.S.218, 242 (1973). It seems quite apparent that in this case the opposite was true. Police seized the Petitioner when he was very vulnerable, held him over the weekend, did not video tape or tape record his confession, and the confession was not in his own hand writing, the Petitioner was young and inexperienced at being in custodial interrogation, English was his second language, the police officer felt that it was necessary to give some rights in Khmer, but yet did not give all rights in Khmer. The explanation offered by the arresting officer to the Petitioner as to his rights was inaccurate and at best could easily be misconstrued by the Petitioner. To suggest that anyone could be well-rested after being seized from his mother's home during a period of mourning the death of his father, placed in a jail cell over the weekend and then told that he was going to spend fifty (50) years in jail unless he confessed, defies all concepts of logic and reality.

### PETITONER HAS SATISIFIED HIS BURDEN AND HAS DEMONSTRATED THAT HE IS ENTITLED TO RELIEF

Respondent has asserted on page 13 of his brief that the petitioner did not challenge the fact that the state judgment was based on an unreasonable determination of the facts. However throughout petitioners brief it was asserted that the verdict was against the weight of the evidence, especially considering the totality of the circumstances. Defendant's Miranda and other custodial rights were violated, when he confessed under much duress, the alleged victims did not mention petitioners name as one of the alleged perpetrators until 10-30 days after the incident, even though they claimed they had known him for years, and it was only after the police officer showed the alleged victim a circled photograph of the defendant that the alleged victims named the petitioner as one of the perpetrators. There was no forensic or tangible evidence linking the petitioner to the crime such as, a gun, or money or jewelry which was

allegedly taken from the alleged victims, the alleged victims called the petitioner's sister to translate the alleged crime to the police on the night of the incident and never mentioned the petitioners name, the trial court improperly admitted a hearsay police report which was clearly in violation of petitioner's right to confront his accuser.  Clearly there was an unreasonable determination of both the facts as well as violations of defendant's rights as guaranteed by the United States Constitution.

## DENIAL OF RIGHT TO CONFRONTATION

Petitioner asserts that his claim that the Massachusetts State Courts should not have allowed his constitutional right of confrontation to be violated is properly before this court. GROUND TWO of Petitioners Habeas Corpus Petition begins " Trial court allowed a highly prejudicial police report (witness statement) into evidence.  Defendant's trial attorney objected because he could not cross examine the person who allegedly gave the statement to the police…" The Magistrates REPORT AND RECOMMNEDATION ON MOTION TO DISMISS never stated, referenced or implied that this portion of Petitioners GROUND TWO petition should be dismissed.  The Magistrate only stated he felt that the portion of Ground Two of the petition which dealt with the fact that the petitioner's co-defendant was acquitted was not properly before the federal court because that particular claim had not been presented to the Supreme Judicial Court of Massachusetts. No one disputes the fact that the issue raised by the petitioner regarding the wrongful admission of a hearsay police report was presented to all courts in Massachusetts and therefore defendant clearly exhausted his remedies in the state courts as to this issue.  The clear order of the Magistrate was " Thus, at this juncture, the Court shall recommend only that the unexhausted claims be addressed by the petitioner, either by a voluntary withdrawal of the claims or by a motion that action on the petition be stayed so that he may seek to have the state

courts address the unexhausted claims."

The respondent clearly misstates the fact that at any point that that Petitioner conceded that the entire portion of Ground Two was not exhausted. Instead Petitioner clearly asserted "More specifically respondent (petitioner's counsel mistakenly referred to his client as respondent rather than petitioner) withdraws that portion of Ground Two which alleges that the Trial Court refused to allow into evidence that co-defendant was acquitted of all charges…." At no point did the court order or did petitioner's counsel concede that the portion of petitioner's Habeas Corpus petition which dealt with the hearsay police report was not exhausted. Respondent then asserts that because he subsequently filed a self-serving opinion that he is treating Ground Two as being omitted completely and that this pontification should somehow supersede the order of the Magistrate that petitioner need only withdraw his unexhausted claims for the petition to move forward. Clearly the Magistrates order only pertained to the unexhausted claims and therefore the improperly admitted police report is properly before the court.

> The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Crawford v. Washington, 541 U. S. 36, 53-54. These cases require the Court to determine which police "interrogations" produce statements that fall within this prohibition. Without attempting to produce an exhaustive classification of all conceivable statements as either testimonial or non-testimonial, it suffices to decide the present cases to hold that statements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. Davis v. Washington, 126 S. Ct. 2266 (U.S. 06/19/2006)

The police report at issue that was admitted into evidence was an interview with witness Tethbun, which occurred on February 9, 1999 at the Lowell Police Station. The report was typed by Officer Conroy and allegedly signed by Tethbun. (defendant's exhibit #2 pg 15).

The indictments allege that the Petitioner committed the crimes on January 9, 1999 (defendant's exhibit 2 pages 1-9). Therefore one month had elapsed between the time of the alleged crime and the time that Tethbun made her statement to the police. In one's wildest imagination the stale report/statement could not meet the required condition of admissibility based on exigent circumstances. Clearly the police report was testimonial as outlined by <u>Davis</u> and therefore improperly admitted as dictated in <u>Crawford.</u>

Respondent then attempts to assert that Petitioner waived his right to challenge the admissibility of the Report because Petitioners Trial counsel wanted to introduce a portion of a completely different document, a trial transcript of Tethbun from a co-defendants trial. Petitioner asserts that it was improper for the Trial Judge to hold hostage an admissible Trial transcript, (unless defendants counsel agreed to the admission of an unreliable witness statement) where clearly there was an opportunity for cross examination by the same party (the Commonwealth) in regard to the trial transcript and therefore it met the reliability standards and fundamental fairness challenges that occur during a trial. The fact that the witness referenced the Police report in her trial testimony, in codefendant's case, does not make it admissible. At the trial of the codefendant the commonwealth could have attempted to impeach her with the police report and then introduce that testimony, which was subject to cross examination. The fact that a witness makes a reference to a document at trial does not mean that the document is automatically admissible and the Trial Judge should not have made such an assumption. Clearly Petitioner's Trail counsel could not cross examine the highly damaging police report that the Trail Judge impermissibly allowed into evidence for the jury to consider. The report was crafted and polished by Officer Conroy and therefore told the

5

story he wanted to tell and Tethbun merely signed her name. She had an interpreter when she testified at the codefendant's trial so it cannot even be assumed that she could read let alone understand English. Then of course all of the other challenges such as whether she was on medication, sober, promised any inducements by the Lowell Police or whether she felt intimidated by the Lowell Police could not be explored. This was an incredible disadvantage for the Petitioner at trial and it clearly violated his constitutional rights.

The Respondent made reference to the case of <u>Evans v. Verdini</u> 466 F. 3d 141, 147 (1st Cir. 2006) in support of his assertion that the admission of hearsay police report was proper because petitioners trial counsel sought to introduce Tethbun's trial testimony from a codefendants trial into evidence and thereby opened the door for the clearly impermissible hearsay police report regarding Tethbun. However there are clear distinctions between <u>Evans</u> and the Petitioner's case. First the <u>Evans</u> court noted that The Supreme Judicial Court of Massachusetts (SJC) had already made a determination that it was indeed error for the trial court to allow grand jury testimony into evidence but that in view of all the other evidence it was harmless error. Conversely the Appeals court in Petitioner's case merely stated that it was proper to allow the hearsay police report into evidence. (Petitioner's Exhibit 6 page 3). Petitioner in his memorandum pointed out that the ruling of the Appeals court for the Commonwealth as to this issue was clearly contrary to <u>Crawford v.Washington</u>, supra. The cases cited by the Appeals court in support of its opinion were clearly distinguishable from what occurred at Petitioner's trial (page 27 of Memorandum in support of Petition). Additionally the <u>Evans</u> court noted that while one statement may be admissible because of reliability another related statement may be excluded because of lack of reliability. This is

6

precisely the claim of the Petitioner. The police report of Tethbun was totally unreliable. Her trial testimony which was subject to an oath under the pains and penalties of perjury, and cross examination by the Commonwealth did meet the tests of reliability. Additionally it is noteworthy that at the trial in which Tethbun Testified the Commonwealth had every opportunity and to cross examine Tethbun. Therefore they are estopped from arguing that by admitting her trial testimony that it would have somehow been prejudicial or unfair. The police report was already in existence prior to her testimony at co-defendants trial so clearly the Commonwealth had the opportunity at the codefendant's trial to examine her at length about the police report. Clearly it would have been proper and it was required that the trial court admit into evidence the trial testimony of Tethbun which had all the protections for both sides in place and exclude the unreliable hearsay police report which had none of the required protections when it was created. The defendant did not waive any right to confrontation as his trial counsel made the appropriate objections to the admission of the Police report.

Respondent also made reference to a number of other cases where a defendant caused a waiver by admitting evidence that otherwise may have been inadmissible, had it not been for defendants introduction of the evidence at trial. Again the distinction in Petitioners case is that the Trial testimony was clearly admissible and the police report was not. The defendant never attempted to introduce evidence that was not admissible on its own merit, as was the trial testimony of Tethbun. The Commonwealth however was improperly allowed to introduce the un-scrutinized constitutionally inadmissible hearsay police report/statement of Tethbun and this was error.

7

A police report which is drafted by a police officer and then signed by an individual who may not have been able to read or understand its contents and is admitted into evidence is particularly offensive to any notion of justice.

Respondent then asserts that even if the admission of the police report violated petitioner's rights it was harmless. However, the police report was highly damaging and inflammatory, it made reference to threats to kill the victims, reference to Tethbun picking out Petitioner's photo from a photo-aray, which she subsequently stated in her trial testimony that Petitioners photo had been circled by the police prior to her viewing the photo, the statement referenced the fact that Tethbun, never came forward before the day of the statement( as one month had expired between the time of the statement and the time of the alleged crime) because she was afraid she would be killed, although there was never an explanation as to what made her unafraid, if that was in fact the case. In essence the statement prepared by officer Conroy and allegedly signed by Tethbun was a nice neat package to cover all the bases and inflame the emotions of the jury, but it was totally unreliable.

In terms of the other evidence against the Petitioner there was no forensic evidence, there was no gun, money, jewelry or any other tangible evidence linking the petitioner to the alleged crime, the alleged witnesses claimed that for some unexplainable reason the petitioner allegedly lifted up his face mask so they could see part of his face and that is how they allegedly recognized him. But without any credible explanation, when the police came to the scene the Petitioner's name was never mentioned; and in an even more bizarre twist the alleged victims called the petitioners sister , who lived with the Petitioner, immediately after the crime for assistance, allegedly with translation, although a Lowell police officer testified

8

that at least one of the victims spoke pretty good English. The victims testified that they also had another translator to assist in communicating with the police. At no point on the night of the Crime was Petitioners name mentioned as a perpetrator. The whole sequence defies logic. Co-defendants were acquitted because the alleged victims contradicted themselves at trial. There was not overwhelming evidence of defendant's guilt but clearly there was ample reasonable doubt.The admission of the carefully police crafted statement, which Tethbun signed was indeed very harmful. With the lack of forensic, tangible, reliable and sensible evidence in this case it certainly cannot be said that the error was harmless. It in any event it is the Commonwealth's burden to prove that it was harmless and in this case it cannot.

## VAGUENESS OF THE HOME INVASION STATUTE

The first question that arises is that if the Home Invasion Statute was so clear then why did the legislature change it in 2004. Why also did the trial judge in Petitioner's case clearly have difficulty with it, as have many other defense lawyers, prosecutors and judges? Respondent on page 40 of his brief points out in his brief that in Commonwealth v.Berte 57 Mass App. Ct 79 (2003) " The Berte court's opinion was equally unequivocal, stating that "the only rule gleaned from the statute as written is that probation is prohibited. It may not apply to those over age seventeen, nor to those who have committed a second offense under the statute, nor to anyone who is convicted of violating this law" quoting Berte at 57. But the last part of the statute states:  *The sentence imposed upon a person who, after having been convicted of violating any provision of this section, commits a second or subsequent offense under the provisions of this section shall not be suspended or placed on probation.*  When any person interprets this statute, under the guidance that all criminal statutes must presume the most

9

gracious interpretation against infringing on a person's liberty, then it must be presumed that if a person has not committed a second offense then he can receive a suspended sentence or probation regardless of age. But as the trial judge pointed at the sentencing of the Petitioner that it seems illogical that the only choices a sentencing judge has under this statute is a suspended sentence, probation or sentencing a person to a minimum of 20 years. The Appeals court cannot turn night into day by pretending there is no difference. Interpreting a statute and completely ignoring the concept of probation when the statute clearly states "probation" clearly goes against concepts of statutory construction and interpretation. In essence pretending like the word probation is not there constitutes a sucker punch for the ordinary citizen who believes that the word "probation" means "probation". However it seems apparent that the Appeals Court tried its best to make the most out of a vague non-sensible statute rather than call the beast what it really is, unintelligible junk not worthy of being printed anywhere.

If a statute is illogical it creates confusion thereby is vague because everyone must struggle to make sense of something that does not make sense. The 1998 version of the Home Invasion statute creates a lesser penalty for a person who is armed with a more dangerous weapon a gun. The <u>Berte</u> court stated in describing and interpreting the home invasion statute."The incongruity of this result is not lost on us, and we cannot fault the judge for her error". Berte at 32. *Attempting* to rationalize a vague, illogical, and confusing statute is not the same thing as accomplishing rationalization. The legislature subsequently changed the statute. But the later *attempted* correction by the legislature in changing the statute in 2004 cannot retroactively be applied to the Petitioner as it would amount to an ex-post facto law.

Webster's New Universal Unabridged dictionary defines vague as : *not clearly or explicitly expressed or stated: indefinite or indistinct in nature or character, as ideas or feelings etc. perceptible or recognizable only in an indefinite way; not definitely established, determined, confirmed, or known; uncertain: not clear or definite in thought understanding, or expression.* One could easily substitute the 1998 Home Invasion Statute with the definition of vague.

If some of the most sophisticated minds in the Commonwealth have difficulty interpreting this statute it cannot be anything else but vague and therefore it cannot meet the necessary requirements of constitutionality. It is especially important that this statute have absolute clarity because we are not talking about a $50.00 fine. Aside from first degree murder there is no other harsher sentence for any crime in the Commonwealth because it makes reference to a minimum 20 year sentence, if the crime is committed with a penknife, beer bottle or shod foot, if the perpetrator is lucky enough to bring a gun then he may only get 10 years. The statute encourages more potential harm to victims by encouraging would be perpetrators to bring guns to get a lesser sentence. Is that what the legislature intended? The statute is illogical ,confusing, vague, unreasonable and dangerous and is clearly not what the Framers of the Constitution had in mind to put the ordinary citizen on clear notice.

## CONCLUSION

If I were to teach a law course on the violation of Constitutional Rights I could use Petitioner's case as a prototype. His Constitutional rights were violated in so many different ways by so many different methods. The Petitioner is entitled to relief and he implores this Honorable Court to grant him the relief to which he is entitled.

## CERTIFICATE OF SERVICE

Middlesex, ss                                                                                       December 24, 2007


    I hereby certify, I have this day, delivered electronically sent and via first class mail postage prepaid, a copy of Petitioner's Response to Opposition to Habeas Relief to:  Randall Ravitz, Esquire, Assistant Attorney General, Commonwealth of Massachusetts, One Ashburton Place, Boston, MA 02108.


    /s/
    _____
    David P. LiBassi, Esquire

Case 1:05-cv-11358-RGS    Document 29    Filed 12/24/2007    Page 13 of 13