# United States District Court
# District of Massachusetts

LOEURTH SOK,
      Petitioner,

V.

                        CIVIL ACTION NO. 05-11358-RGS

LUIS SPENCER,
      Superintendent,
      MCI, Norfolk,
            Respondent.

## *REPORT AND RECOMMENDATION ON PETITION UNDER 28 U.S.C. § 2254 FOR A WRIT OF HABEAS CORPUS  (#1)*

COLLINGS, U.S.M.J.

### *I.  Introduction*

Presently before the Court is petitioner Loeurth Sok's ("Sok" or "petitioner") petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#1). Following a jury trial in Massachusetts state court, Sok was convicted of, *inter alia*, robbery while armed and masked, Mass. Gen. L. ch. 265, § 17, home

invasion under Mass. Gen. L. ch. 265, § 18C, and assault with a dangerous weapon under Mass. Gen. L. ch. 265, § 15B. Sok is currently incarcerated in Massachusetts state prison.

Sok filed his section 2254 petition on June 28, 2005, with accompanying exhibits. Certain of his claims were found to be unexhausted (*see* Report and Recommendation on Motion to Dismiss Petition (#6), #11), and Sok withdrew those claims so that he could proceed on the merits of his exhausted claims (*see* Petitioner's Response to the Report and Recommendations of Judge Robert B. Collings, #12 at 1). Thereafter, the respondent filed an Answer to Amended Petition (#14) and a Rule 5 Appendix Accompanying...Answer to Amended Petition (#15). On August 31, 2007, Sok filed his Memorandum in Support of Relief Pursuant to his Habeas Corpus Petition (#21), with accompanying exhibits (#23). On November 23, 2007, the respondent filed a Memorandum of Law in Opposition to Petition (#26), and on December 24, 2007, the petitioner filed a Response to Oppostion [sic] to Habeas Relief (#29).

Sok seeks to challenge the constitutionality of his detention on four grounds: 1) that he did not voluntarily and intelligently waive his *Miranda* rights and that his confession, which was admitted at trial, should therefore

have been suppressed; 2) that his rights under the Confrontation Clause of the Sixth Amendment were abridged when the state trial court admitted into evidence at trial a statement given to police by a witness/victim who was unable to testify at trial; 3) that there was insufficient evidence to support his conviction; and 4) that the 1998 version of the Massachusetts home invasion statute, under which he was convicted, is unconstitutionally vague. The petition is ripe for consideration on the merits of these remaining claims. For the reasons set out below, the Court will recommend that the petition be denied in its entirety.

## II. Factual Background

The following facts provide an overview. The Court develops further factual details as needed in its discussion of Sok's individual claims, mindful that the Court is "bound to accept the state court findings of fact unless [the petitioner establishes] by clear and convincing evidence[] that they are in error." *McCambridge v. Hall*, 303 F.3d 24, 26 (1st Cir. 2002) (*en banc*) (citing 28 U.S.C. § 2254(e)(1)).

On January 9, 1999, at about 1:00 a.m., three or four individuals forced their way into an apartment in Lowell, Massachusetts and robbed the occupants

of cash, jewelry and cigarettes. (*See* #23, Exh. 4, Memorandum & Order on Defendant's Motion to Suppress Custodial Statement, at A-1) According to the victims, the intruders were wearing masks and were armed. Several weeks later, on Friday, February 26, 1999, Sok was arrested in connection with the robbery, and taken to the Lowell police department. (#23, Exh. 4 at A-2) At some point, Sok asked to speak with the arresting officer, Detective Philip Conroy ("Conroy"). Conroy told Sok that he did not have time to talk then, but that he could talk later. The following evening Conroy interviewed Sok, after having read Sok his *Miranda* rights. At that point, according to Conroy, Sok confessed to his involvement in the home invasion. (*See* #23, Exh. 4 at A-3-A-6)

On March 31, 1999, a Middlesex County grand jury indicted Sok on, *inter alia*, three counts of robbery while armed and masked or disguised and one count of home invasion, and Sok pled not guilty to all counts at his arraignment on April 22, 1999. (#15, Exh. A at 11) Before his trial, Sok sought to suppress the confession on the grounds that Sok's waiver of his *Miranda* rights was not voluntary and intelligent. (*See* #15, Exh. D, Motion to Suppress Hearing) A Massachusetts Superior Court judge (McHugh, J.) conducted a suppression

hearing on July 13, 1999, at which Sok and Conroy testified. The state court determined that the defendant's waiver of his *Miranda* rights and confession were voluntary and intelligent, and denied the motion to suppress. (*See* #23, Exh. 4 at A-10)

Thereafter, Sok was tried in the Middlesex Superior Court over five days between December 5 and December 11, 2000. At Sok's trial, the defense sought and was allowed to read into evidence the previous testimony of Ronny Thethbun ("Thethbun"), one of the victims. Thethbun was unable to testify at Sok's trial for medical reasons, (*see* #15, Exh. H, Tr. IV:74), but had previously testified at the trial of John Prum ("Prum"), who had also been arrested in connection with the robbery. In her testimony at Prum's trial, Thethbun stated that when she identified Sok from a photo array at the Lowell police station on February 9, 1999, the police had "already circled" Sok's picture. (#15, Exh. H, Tr. IV:73) A jury subsequently acquitted Prum of all charges. At Sok's trial, Sok's counsel was permitted to introduce a portion of Thethbun's testimony given at Prum's trial. In an apparent effort to impeach Thethbun's previous testimony, the Commonwealth was permitted to introduce Thethbun's signed statement to police in which she stated, *inter alia,* that she picked Sok out of a

photo array on the computer. (#15, Exh. A at 16)  Sok objected to the admissibility of the signed statement, but the state trial court overruled that objection. (#15, Exh. H, Tr. IV:83)

Sok was found guilty on all charges, and was sentenced to a term of twenty years to twenty years and one day for the home invasion conviction, and concurrent sentences on other counts.  Sok appealed his conviction and sentence and on May 6, 2004, the Massachusetts Appeals Court ("the Appeals Court") affirmed the conviction, but vacated the sentence on the home invasion conviction and remanded for re-sentencing on that count to a maximum sentence of twenty years and a minimum sentence of ten years imprisonment. (*See* #1, Exh. 3 at 4-5)  The Massachusetts Supreme Judicial Court denied Sok's Application for Further Appellate Review on June 30, 2004. (*See* #1 at 3 ¶ 9)

### III.  *Analysis*

### A.  Applicable Law Governing Review of Section 2254 Habeas Petitions

"[A] federal court may not issue a habeas petition 'with respect to any claim that was adjudicated on the merits in State court proceedings' unless the state court decision: 1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States' or 2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *McCambridge,* 303 F.3d at 34 (quoting 28 U.S.C. § 2254(d) (Supp. II 1996)). A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000)(O'Connor, J.). A decision represents an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. An "unreasonable application" requires "some increment of incorrectness beyond error. . . . The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *McCambridge*, 303 F.3d at 36 (internal quotations and citation omitted).

## B.  The Merits

### 1.  Ground One: Validity of Waiver of *Miranda* Rights

Sok first claims that he "did not make a knowing, voluntary and intelligent waiver of his Miranda rights and other rights regarding self-incrimination."[1] (#1 at 6)   *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Here, there is no dispute that the Massachusetts Appeals Court decided this claim on the merits, and therefore AEDPA's deferential standard of review applies.  The Court's inquiry, then, is limited to whether the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

The Court does not read Sok's petition or brief to argue that the state court's decision was "contrary to" clearly established federal law.  The clearly established federal standard at issue here has been set out in *Miranda* and its progeny.  *Miranda* holds that a defendant may waive the rights conveyed in the *Miranda* warnings "provided the waiver is made voluntarily, knowingly and intelligently."  *Miranda*, 384 U.S. at 444; *see also Colorado v. Spring*, 479 U.S. 564, 572 (1987).  The standard for assessing the validity of a waiver is as

---

[1]    Sok challenges the voluntariness of his waiver of his *Rosario* rights, *see Commonwealth v. Rosario*, 422 Mass. 48 (1996), and his right to have his questioning recorded electronically, *see Commonwealth v. DiGiambattista*, 442 Mass. 423 (2004).  These are rights derived solely from state law, and the Court does not consider them on federal habeas review. *See, e.g., Estelle v. McGuire* 502 U.S. 62, 67-68 (1991).

8

follows:

> The inquiry has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (citations omitted). Thus, a court

must ensure that a waiver of *Miranda* rights was both knowing and voluntary;

it tests the validity of the waiver by examining the totality of the circumstances

surrounding the interrogation, including the characteristics of the accused, such

as age and educational background, and the details of the interrogation, such

as the length of the detention, the lapse of time between arrest and questioning,

and the use of physical punishment such as deprivation of food and sleep.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *see also United States v.*

*Rojas-Tapia*, 446 F.3d 1, 4 & n.1 (1st Cir.) (discussing factors), *cert. denied,*

–U.S.–, 127 S.Ct. 231 (2006). A determination of "voluntariness" does not

"turn[] on the presence or absence of a single controlling criterion," but rather

"a careful scrutiny of all the surrounding circumstances." *Schneckloth*, 412 U.S. at 226. The question of voluntariness is a question of fact. *Id.* at 227.

The state motion court's memorandum applied the proper rule in explicitly citing to *Miranda*, (*see* #23, Exh. 4, Memorandum and Order on Defendant's Motion to Suppress Custodial Statement at A-10), and to *Commonwealth v. Mandile*, 397 Mass. 410 (1986), which correctly identifies the "totality of the circumstances" standard. *See id.* at 413. Likewise, the Appeals Court, in its opinion on review, wrote:

> When determining whether the defendant voluntarily waived his Miranda rights, 'the question is 'whether the will of the defendant had been overborne so that the statement was not his free and voluntary act' . . . .' Commonwealth v. Cruz, 373 Mass. 676, 688 (1977), quoting from Procunier v. Atchley, 400 U.S. 446, 453 (1971). Determining the voluntariness of a waiver requires an evaluation of the 'totality of the circumstances, including promises or other inducements, conduct of the defendant, the defendant's age, education, intelligence and emotional stability, experience with and in the criminal justice system, physical and mental condition, the initiator of the discussion of a deal or leniency . . . and the details of the interrogation, including the recitation of Miranda warnings.' Commonwealth v. Mandile, 397 Mass. 410, 413 (1986).

#1, Exh. 3 at 2.

10

The state courts thus properly analyzed the validity of the waiver under the federal standard,[2] and the state court's decision was therefore not contrary to clearly established federal law.  *Cf. Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (state court need not cite Supreme Court cases or indeed even be aware of the cases, as long as the reasoning or the result of the state court's decision do not contradict Supreme Court precedent).[3]

It is undisputed that Sok signed a written waiver of his *Miranda* rights, (*see* 15 Exh. A at 17),[4] but Sok challenges the validity of that waiver.  Sok

---

[2]

Under Massachusetts state law, the Commonwealth must establish "voluntariness" beyond a reasonable doubt.  *See Commonwealth v. Mandile*, 397 Mass. 410, 413 (1986).  *Mandile* explicitly recognizes that this standard is more favorable to the defendant than the federal constitutional standard, *see id.* (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)), and the Court may therefore "presume the federal law adjudication to be subsumed within the state law adjudication."  *McCambridge*, 303 F.3d at 35.

[3]

Sok complains at length that the Appeals Court's analysis was inadequate because it "did not engage in any independent analysis of what took place at the Motion to Suppress hearing." (#21 at 20)  However, in determining whether a state court's application of federal law was "unreasonable," a habeas court "do[es] not focus on the quality of the court's reasoning but rather on the reasonableness of the outcome."  *Ellen v. Brady*, 475 F.3d 5, 9 (1st Cir. 2007); *see also Hurtado v. Tucker*, 245 F.3d 7, 20 (1st Cir.) ("The ultimate question on habeas . . . is not how well reasoned the state court decision is, but whether the outcome is reasonable."), *cert. denied*, 534 U.S. 925 (2001).

[4]

The Lowell Police Department form, entitled "Miranda Warning" reads as follows:

1) Before we ask you any questions, you must understand your rights.
2) You have the right to remain silent.
3) Anything you say can be used against you in court.
4) You have the right to talk to a lawyer for advice before we ask you any questions and to have him or her with you during questioning.
5) If you cannot afford a lawyer, one will appointed [sic] for you before questioning if you wish.
6) If you decide to answer questions now without a lawyer present, you will still have the right to stop questioning at any time until you can talk to a lawyer.
7) Do you understand what I have read to you?
8) Having these rights in mind, do you wish to talk to me now?

asserts that the questioning detective coerced him into signing the waiver of his *Miranda* rights, that Sok lacked the language ability to understand his rights because Khmer was his first language, and that he did not fully understand the nature of the rights he was waiving.  (*See* #1 at 6; #21 at 18-20)  In addition, he asserts that, at the time of his questioning following his arrest, he had not slept in the 24-26 hours prior to interrogation, that he had eaten very little, that he was "confused and depressed" because his father had just passed away, that Detective Conroy coerced him into signing the waiver of *Miranda* rights by threatening to send him to jail for fifty years, and that the statement that Conroy had him sign was false, but that Conroy physically coerced him into signing it.  (*See* #21 at 9-10)

Sok's contentions must contend with the presumption of correctness that a habeas court must accord to the state court's finding of historical fact.  On July 13, 1999, the state court conducted a suppression hearing after which it determined that Sok had voluntarily and knowingly waived his *Miranda* rights. In rendering its opinion, the state suppression court properly considered the defendant's age, facility with English, educational background, physical

---

#15, Exh. A at 17.

condition at the time of the interrogation, and the circumstances surrounding the interrogation itself, including the size of the room, the lapse of time between the arrest and the questioning and Sok's suggestion at the hearing that Conroy may have threatened him. Significantly, for present purposes, the hearing judge based his ultimate conclusion that the waiver was valid on his complete rejection of Sok's version of events surrounding the circumstances of the interrogation. The state court elaborated:

> As stated, I reject defendant's account in its entirety. I do so because it makes no sense, is wholly inconsistent with defendant's level of sophistication and fluency in the English language, and is wholly inconsistent with my assessment of the credibility of Det. Conroy and of defendant on the witness stand in this case.

#23, Exh. 4 at A-10.

Thus, the state court expressly credited Conroy's account of events and rejected Sok's version. The suppression court's credibility determination effectively dooms Sok's habeas challenge to the admissibility of his confession. *See Coombs v. State of Maine*, 202 F.3d 14, 18 (1st Cir. 2000) ("Such a state court finding of 'basic, primary, or historical facts' based on a credibility determination is 'presumed to be correct,' subject only to rebuttal by 'clear and convincing evidence.'") (quoting 28 U.S.C. § 2254(e)(1)). Because Sok has not refuted by

13

clear and convincing evidence the factual findings of the state court which undergird the voluntariness determination (Sok simply offers as evidence citations to his own testimony at the suppression hearing), the Court analyzes this claim based on the unrebutted facts as found by the state courts.

### a. Was the Waiver Voluntary?

Sok asserts that he did not voluntarily waive his *Miranda* rights because he "was tired and intimidated" at the time he waived his rights. (#1 at 6)  He claims that he had not slept or eaten in the twenty-six hours before the questioning, (*see* #21 at 6, 10), and that he was suffering from depression because of his father's recent death.  Sok further claims that the questioning officer, Detective Conroy, threatened that unless Sok signed the waiver that

Sok would go to jail for fifty years.

It is true that "[a]mong the totality of factors which may be material in determining the voluntariness of a confession is whether law enforcement officials subjected defendant to physically coercive punishment, such as an unreasonable deprivation of food or sleep."  *Rojas-Tapia*, 446 F.3d at 4.

14

However, based on testimony at the hearing, the state suppression court rejected the claim that Sok was tired and hungry at the time of questioning, and instead specifically found Sok was offered a sandwich the morning after his arrest and ate some of it, and that "[h]e remained in the cell sleeping, on and off, throughout the remainder of Saturday." (#23, Exh. 4 at A-3)  In addition, the state court found that just before Conroy questioned Sok, Conroy had provided Sok with both food and cigarettes.  (*See* #23, Exh. 4 at A-8)  The court concluded that:

> Defendant had slept throughout [Saturday] and was not tired.  Although he had not had much to eat throughout the course of the day, he had eaten to his satisfaction and had smoked to his satisfaction before questioning began.  Neither hunger nor a desire for a cigarette influenced either his decision to speak or the content of what he said. . . .  He was not overcome by fear - although he did have an appropriate apprehension about his circumstances.

#23, Exh. 4 at A-7.

Similarly, the state court expressly rejected Sok's testimony that Conroy physically coerced or threatened Sok in any way during the interrogation.  (*See* #23, Exh. 4 at A-7)  The court made plain that it considered Sok's account to be "wholly inconsistent with [the court's] assessment of the credibility of Det.

Conroy and of defendant on the witness stand." (#23, Exh. 4 at A-10)  This

credibility assessment effectively ends the matter.  *See Coombs*, 202 F.3d at 18.

### b.  Was the Waiver Knowing?

Sok also contends that his waiver of his *Miranda* rights was ineffective

because he was only 20 at the time of his arrest, and because he was born in

Cambodia and language barriers prevented him from fully understanding the

rights he was waiving.    Again, the state court's factual findings are

determinative of this claim:

> On February 26, defendant was 20 years of age.
> He had been born in Cambodia in 1979 but came with
> his family to the United States in 1985 when he was
> approximately 6.  Ultimately, he and his family moved
> to the Lowell area where he has remained ever since.
> He attended many Lowell public schools where all of
> his classes were taught in English.  He remained in
> school until he was mid-way through the 11th grade. .
> . .
> Defendant speaks Khmer at home with his family and
> sometimes speaks it with his friends.  Nevertheless, he
> is perfectly familiar with, and fluent in, spoken English,
> ideomatic [sic] and proper.  He understood what Det.
> Conroy told him about his 'Miranda rights' and he
> understood what he read on the 'Miranda sheet' Det.
> Conroy gave him after his recitation had ended.

#23, Exh. 4 at A-5 (footnote omitted).

Based on these factual determinations, it was not an unreasonable application

of federal law for the state court to conclude that Sok fully understood the nature of the rights he was waiving. Indeed, the Court notes that Sok himself testified that he had no problems understanding English. (*See* #23, Exh. 8, Tr. of Suppression Hrg. at 51) Likewise, the state suppression court rejected as incredible Sok's claim that he misunderstood the meaning of the *Miranda* warnings.[5] Again, this was not an unreasonable determination given the state court's findings on Sok's educational background, its conclusion that Sok was fluent in English and the state court's observations of Sok at the hearing.

For all the above reasons, the Court recommends that Claim One be dismissed.

## 2.  Ground Two: Admission of Witness Statement[6]

On February 9, 1999, about one month after the robbery, Ronny Thethbun ("Thethbun"), one of the victims, gave a statement at the Lowell Police Department recounting the events of January 9. (*See* #15, Exh. A at 15-

---

[5]

Sok testified that he thought "the right to remain silent" meant that he must remain silent while he was in custody unless he was spoken to by a police officer, and that he thought his right to counsel only applied when he appeared in court the following Monday. (*See* #23, Exh. 4 at A-5, n.1)

[6]

Respondent argues that the petitioner's claim regarding the admission of Thethbun's statement should be treated as dismissed. (#26 at 22) The record establishes that this Court determined that a portion of this claim had not been exhausted in state court and subsequently, the petitioner dropped only that portion. (#12) Therefore, the Court will accordingly examine this question.

16)  In her account, Thethbun stated, *inter alia*, that:

> Det Conroy and Ung then bring [sic] me to another room to look at pictures on a computer. After looking at the pictures I pointed at photo #7 and told them this was one of the robbers, I'm positive. The reason I know this is because the mask that he was wearing fell down and I saw his face. Conroy asked me how close he was when this happened; I told him that it happened right in front as he was taking my jewelry from me.

#15, Exh. A at 16.

Thethbun testified at the trial of John Prum, Sok's co-defendant, a week before Sok's trial commenced. Thethbun had been ill at the time she testified at Prum's trial, (*see* #15, Exh. H, Tr. IV: 76), and by the time of Sok's trial, Thethbun was in the intensive care unit of the hospital, (#15, Exh. G., Tr. III: 182), and was therefore unavailable to testify. On the fourth day of Sok's trial, Sok's counsel asked to introduce a portion of the testimony that Thethbun had given at Prum's trial. (*See* #15, Exh. H., Tr. IV: 72)  In the portion of Thethbun's testimony that the defense sought to introduce, Thethbun testified that the police had already circled the photo of Sok in the photo array that they displayed on February 9.[7]  The prosecutor argued against admission of

---

[7]

The portion of the testimony that defense counsel ultimately read into evidence is as follows:

Thethbun's prior testimony, citing unreliability, and argued that if the court admitted it, Thethbun's prior statement to police should be admitted as well. Defense counsel objected to the admission of the statement as unexamined hearsay, arguing that although a portion of the statement might have rebutted the testimony he sought to introduce, the remainder of the statement–which included the details of Thethbun's account of the events of January 9–should be excluded.  The state trial court rejected this argument and permitted the

---

[Defense Counsel]: Yes.  Page 5 starting at Line No. 8.
    "Question, 'Did the police ask you if you could recognize any of the robbers' faces?'
    "Answer, 'I saw one tall guy or a big guy.  They fall a little bit.  They have a beard, a mustache, and then they put it back.  I just saw that part.'
    "Question, 'And I want to show you a photograph, and I'm going to ask you if that's your signature.'
    "Answer, 'Yes.'
    "Question, 'Whose – is one of these pictures circled?'
    "Answer, 'Yes, I know this one.'
    "Question, 'Who circled this picture?'
    "Answer, 'I do not know.'
    "Question, 'Did the police circle that picture?'
    "Answer, 'Yes.'
    "Question, "And what did the police tell you when they circled the picture?'
    "Answer, 'I do not know what they spoke because I do not know English.'
    "Question, 'When they gave you this picture, was that already circled?'
    "Answer, 'Yes, they already circled it' – strike that.  'Yes, they already circled it.'
    "Question, 'And they told you to sign your name?'
    "Answer, 'Yes.'
    "Question, 'Do you know if this person is a person by the name of Loeurth Sok?'
    "Answer, 'Yes.'
    "Question, 'This is a picture of Loeurth Sok?'
    "Answer, 'Yes.'
    "Question, 'And do you know if this person was one of the robbers?'
    "Answer, 'I don't know.'
    "Question, 'You don't know if he was one of the robbers?'
    "Answer, 'I don't know.  I just know that he is Loeurth.'"

#15, Exh. H, Tr. IV at 96-98.

prosecution to read the entire statement into evidence. (*See* #15, Exh H , Tr. IV: 83)

The Sixth Amendment to the United States Constitution provides, in relevant part, that the accused in all criminal prosecutions "shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause prohibits the admission of an out-of-court testimonial statement unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *See Crawford*, 541 U.S. at 59.[8] The Supreme Court made clear that "[w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.'" *Crawford*, 541 U.S. at 61.

In analyzing Sok's claim, the Appeals Court ruled as follows:

> <u>Witness statement</u>. The defense sought and was allowed to read into evidence the prior recorded testimony of Ronny Thethbun. This testimony was given during the trial of a codefendant.

---

[8]

*Crawford* was decided on March 8, 2004, and the Massachusetts Supreme Judicial Court denied Sok's Application for Further Appellate Review on June 30, 2004. (*See* #1 at 3 ¶ 9) Therefore, the rule announced in *Crawford* would have been binding on the state courts in their review of Sok's confrontation clause claim, and Sok cited to *Crawford* in his ALOFAR. (*See* #1, Exh. 4 at 19)

> The Commonweatlh, apparently seeking to impeach her credibility, sought to introduce a signed statement that Thethbun had given to the police. This was proper. See Commonwealth v. Pina, 430 Mass. 66, 75-76 (1999); Commonwealth v. Mahar, 430 Mass. 643, 648-650 (2000).

#1, Exh. 3 at 3 (footnotes omitted). The Appeals Court analyzed the claim as a matter of evidence, concluding that the police statement was admissible to impeach Thethbun. *See Pina*, 430 Mass. at 75 (under Fed. R. Evid. 806, "the credibility of the declarant of a hearsay statement may be impeached by any evidence that would have been admissible if the declarant had testified, even if the declarant has no opportunity to deny or explain any inconsistent statement or behavior"). The Court, thus, considers the claim *de novo*. *Evans v. Verdini*, 466 F.3d 141, 145 (1st Cir. 2006) ("federal claims raised before the state court but . . . left unresolved are reviewed de novo") (internal quotation marks and citations omitted), *cert. denied sub nom. Evans v. Thompson*, –U.S.–, 127 S.Ct. 2057 (2007).

On the Appeals Court's reasoning, then, the statement was admissible as a prior inconsistent statement because it was offered not as proof of the matter asserted, but for its impeachment value. *Crawford* stated that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than

establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9.

Sok complains, however, that it was constitutional error to admit the entire

statement, and that the statement contains otherwise inadmissible, substantive

evidence. The Commonwealth, for its part, argues that Sok waived his

Confrontation Clause protection by choosing to bring in Thethbun's trial

testimony in the first place, and opening the door for the admission of the

rebuttal evidence. *Cf. Evans,* 466 F.3d at 147 (rejecting Confrontation Clause

claim where defense's cross-examination of witness "created the basis for the

admission into evidence of [the witness's] prior inconsistent statement"). The

Commonwealth also contends, *inter alia*, that the law under *Crawford* was not

"clearly established" at the time the Supreme Judicial Court denied Sok's

ALOFAR–the *Crawford* court, for example, did not define "testimonial." *Cf.*

*Crawford*, 541 U.S. at 68 (leaving for "another day any effort to spell out a

comprehensive definition of 'testimonial'").[9]

The Court will bypass this thicket because even if the Court were to

---

[9]

There is no doubt that Thethbun's statement was "testimonial" under the Supreme Court's later clarification in *Davis v. Washington*, 547 U.S. 813, 822 (2006) (holding that a statement volunteered to a police officer may be testimonial if the primary purpose for which the statement will be used is to establish or prove past events relevant to a criminal prosecution), and Thethbun's statement to the police arguably also fell within *Crawford's* holding. *See Crawford*, 541 U.S. at 68 (stating that "[w]hatever else the term ['testimonial'] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations").

conclude that there were constitutional error here, that error did not have a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, –U.S.–, –, 127 S.Ct. 2321, 2325 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)); *see also Delaney v. Bartee*, 522 F.3d 100, 105 (1ˢᵗ Cir. 2008) (bypassing resolution of habeas claims on the merits where no prejudice under *Brecht* standard is established).  The prosecution's theory of the case was that Sok, who worked with two of the victims, knew that the victims had returned home from work having just been paid in cash.  (#15, Exh. I, Tr. V:68) The prosecution's case depended on Sok's confession, in which Sok stated that he had participated in the robbery, (*see* #15, Exh. G, Tr. III: 69-72), and the testimony of three of the four victims of the robbery.  Each of the other victims testified to the manner in which the intruders kicked open the door to the apartment when Thethbun opened the apartment door (*see* #15, Exh. E, Tr. I: 152; Exh. F, Tr. II: 35, 105), and to the details of the robbery; one witness testified to the manner in which Thethbun was robbed of her jewelry. (*See* #15, Exh. F, Tr. II: 36-37)  Each also testified that at least two of the intruders were carrying guns, (*see* #15, Exh. E, Tr. I: 154-155; Exh. F, II: 36, 47-48), and each identified Sok as one of the intruders  (*see* #15, Exh. E., Tr.

I:159,162; Exh. F, II:47-48, 66, 109).   Indeed, two of the victims, Thethbun's

brother-in-law and her sister, testified that they were able to identify Sok

because they worked with him at a company in Leominster.  (*See* #15, Exh. E,

Tr. I:141-142; Exh. F, II: 19, 109)  Another of the victims, Poeur Nao, stated

that she was able to identify Sok because she had been friends with his family,

who lived close by.  (*See* #15, Exh. F., Tr. II:47-48)  Detective Conroy testified

to the manner in which two of the victims had picked Sok out of a photo array

displayed on a computer.  (*See* #15, Exh. G, Tr. III: 24-26)   At best, Thethbun's

statement to the police–which included her account of what happened during

the robbery--was duplicative of the eyewitness testimony of the three other

victims.  Moreover, the defense's theory of the case was that the identifications

of the witnesses were inconsistent and unreliable, (*see* Exh. I, Tr. V: 32).   In

urging the jury to reject Thethbun's statement to the police as inconsistent with

her prior testimony, the defense argued that the statement was less reliable than

her sworn testimony because it had been "taken through an interpreter and

typed up by a third individual."  (*See* Exh. I, Tr. V:33-34)  The prosecution, on

the other hand, noted in closing that Thethbun was ill and vomiting during her

prior testimony.  (#15, Exh. I, Tr. V: 60) As the trial court judge observed in

admitting the statement, "each side can argue to the jury which version they should believe.  It seems to me the obvious answer for the jury to draw is you can't believe either version."  (Exh. 15, Exh. H, Tr. IV:79)  In short, given Sok's own statement to police, the strength of the other eyewitness testimony, and the defense's theory of the case, Thethbun's statement would not have substantially affected the jury verdict.  Accordingly, the Court recommends that Claim Two be dismissed.

### 3.  Ground Three:  Sufficiency of the Evidence

In Ground Three, Sok contends that "[t]he totality of the facts and circumstances were against the weight of the evidence." (#1 at 4 ¶ 7) Thereafter, he asserts a number of circumstances that he suggests undermine the verdict:  that the victims of the crime did not immediately report to the police that Sok was involved in the crime; that it was only weeks after the crime when Sok became a suspect; that the prosecution had no physical evidence linking Sok to the crime, such as fingerprints, a gun, or the proceeds of the robbery.  (#1 at 4 ¶ 7)  In his memorandum supporting his habeas petition, Sok states as a basis for Ground Three that "the [state] Court should have granted defendant's Motion for a Required Finding of Not Guilty on the indecent assault and battery charges as there was no evidence to support a conviction [and] the

Court acknowledged that there was no evidence of sexual gratification." (#21 at 31) (citations to record omitted).[10]

The respondent contends that Ground Three should be limited to a challenge to the sufficiency of the evidence to support a conviction on the indecent assault and battery charge, and should not encompass a challenge to the other counts on which Sok stands convicted. The Court agrees, particularly as Sok makes no response to the respondent's argument in his reply brief. The Court can hardly assess the sufficiency of the evidence where Sok fails to specify with any particularity or developed argumentation the counts of conviction (or the elements within those charges) that he seeks to attack. *See Rocafort v. IBM Corp.*, 334 F.3d 115, 122 (1st Cir. 2003) (a party has a duty to "explain[] arguments squarely and distinctly") (internal quotation marks and citation omitted).[11]

---

[10]

Thereafter, Sok again lists a myriad of factors that he claims undermines the validity of the verdict, (#21 at 31), such as his "involuntary waiver" and the lack of testimony from a co-defendant implicating Sok.

[11]

The Court notes, in any event, that under the sufficiency-of-the-evidence standard set out in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"), Sok's claim would fail, even under *de novo* review. As noted, the prosecution's evidence against Sok consisted mainly of 1) the eyewitness testimony of three of the four victims of the robbery and 2) Sok's statement to Detective Conroy in which he admitted his participation in the robbery. Although at trial, defense counsel moved for a required finding of not guilty on the question of identification, (*see* #15, Exh. G, Tr. IV: 184), complaining about inconsistencies in details of the testimony and the like, a jury would have been entitled to resolve such inconsistencies against Sok and in favor of the prosecution. *See id.* (noting that constitutional standard "gives full play to the responsibility of the trier of

Sok's claim, presented to the Massachusetts Appeals Court, that the evidence was insufficient to support the assault and battery conviction fails for a different reason.  The Appeals Court declined to consider the claim because the conviction had been guilty-filed, and under Massachusetts law, a conviction that has been guilty-filed is not appealable.  *See generally Griffiths v. I.N.S.*, 243 F.3d 45, 51 (1st Cir. 2001) ("Under Massachusetts law, the guilty-filed procedure suspends the adjudicative process, including the defendant's right to appeal, until such time as the court reactivates or makes some further disposition of the case.") (internal quotation marks and citation omitted). Accordingly, when Sok sought to appeal this claim, arguing that there was insufficient evidence to support the assault and battery conviction, the Massachusetts Appeals Court did not consider the claim on the merits, but instead rejected it because Sok had consented to place his conviction on file:

> Indecent assault and battery.  The defendant may not appeal the trial judge's filing of the charge of indecent assault and battery, a topic which the judge discussed with the defendant at sentencing.  'It has long been the practice in this Commonwealth that a judge, after a

---

fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, for example, Sok makes much of the victims' failure to identify him as one of the intruders until a few weeks after the crime.  However, the victims testified to their reluctance to identify Sok, because they claimed that Sok had threatened that he would hurt them if they reported the crime.  There was ample evidence from which a rational trier of fact could have concluded that fear prevented the victims from reporting the crime in its immediate aftermath.

plea of guilty or a conviction may order that the indictment be placed on file.  Absent exceptional circumstances [not found here], we do not consider appeals on assignment of error on indictments placed on file since no appeal may come before us until after judgment, which in criminal cases is the sentence. However, since the placing of a case on file does, inter alia, suspend for as long as the case remains on file, a defendant's right to appeal alleged error in the proceeding, the defendant must consent to the filing.' Commonwealth v. Delgado, 367 Mass. 432, 437-438 (1975) (internal citations omitted).  As the defendant knowingly consented to the court's placing of this charge on file, he may not now appeal that conviction.

#1, Exh. 3 at 3-4.

Given this disposition, the Court entered a Procedural Order on June 16, 2008, noting its preliminary view that Sok had procedurally defaulted this claim because the Massachusetts Appeals Court decision appeared to rest on adequate and independent state grounds.[12]  (*See* Procedural Order, #31 at 1) If so, prudential concerns would prevent this Court would from reviewing the decision.  *See Dretke v. Haley*, 541 U.S. 386, 392-393 (2004); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *see also Oakes v. United States,* 400 F.3d

---

[12]

As the Court noted in its Procedural Order, the Massachusetts Appeals Court unquestionably relied on the state rule in declining to address the merits of Sok's claim, and the state procedural rule appears to have been firmly established and regularly followed. *See Gunter v. Maloney*, 291 F.3d 74, 79-80 (1st Cir. 2002) (discussing "adequacy" and "independence" requirements).  The guilty-filed procedure has a long history in Massachusetts state law, and has long been a common practice. *See generally Commonwealth v. Simmons*, 448 Mass. 687, 692-694 (2007) (discussing history of guilty-filed procedure).

92, 97 (1st Cir. 2005); *Gunter v. Maloney*, 291 F.3d 74, 78 (1st Cir. 2002). Because the Court raised the issue sua sponte, however, the Court gave Sok an opportunity to establish "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Sok then filed Petitioner's Response to the Court's Procedural Order of June 16, 2008 (#33). In this filing, Sok argues that a fundamental miscarriage of justice will result if the Court does not consider the claim. For the following reasons, the Court disagrees and recommends that the claim be dismissed.

First, to the extent that Sok attempts to establish "cause" and "prejudice," this effort fails. To establish cause on habeas review, a petitioner must show "'that some external impediment, such as government interference or the reasonable unavailability of the factual or legal basis for a claim, prevented it from being raised earlier.'" *Goldman v. Winn*, – F. Supp.2d –, –, 2008 WL 2699396, at *14 (D. Mass. July 1, 2008) (quoting *Andiarena v. United States*, 967 F.2d 715, 718 (1st Cir.1992). To establish prejudice, "a petitioner must establish that the error complained of had 'substantial and injurious effect or

influence.'" *Id.* (quoting *Sustache-Rivera v. United States*, 221 F.3d 8, 18 (1st Cir. 2000), *cert. denied*, 532 U.S. 924 (2001)). The Court notes that Sok consented to placing the conviction on file, and to waiving his appeal rights on this claim; there is nothing in the record to suggest that this waiver was anything but knowing and voluntary, as the Massachusetts Appeals Court found. Sok thus intentionally relinquished the opportunity to have this claim reviewed in state court, in exchange for a presumed benefit. Indeed, "[t]he reason why [a guilty-filed] disposition is not appealable is because the practice of not imposing a sentence after an adjudication of guilt may be, by reason of extenuating circumstances or other sufficient causes, beneficial to the defendant." *United States v. Hines*, 802 F. Supp. 559, 572 (D. Mass. 1992). If Sok had wished to pursue an appeal on this conviction, he could have moved (and may still move) for immediate sentencing on this count. *See Commonwealth v. Simmons*, 448 Mass. 687, 698 (2007). Accordingly, any contention that Sok had cause to excuse the default misses the mark.

Likewise, the Court discerns no prejudice arising from any claimed error (i.e., the claim that insufficient evidence supported his guilty conviction), given the guilty filing. Although Sok asserts that a defendant with a guilty-filed

conviction "suffers a variety of substantial detriments," (#33 at 1), Sok has not identified any that apply to him. Sok's abstract complaints about the guilty-filing procedure are unavailing, particularly because the record establishes that the procedure inured to Sok's benefit in this case. The trial court suggested that the conviction be placed on file so that Sok would not be classified as a sexual offender where the evidence "did not indicate any intention on the part of the defendant to achieve any sort of sexual gratification." (#34 at 15)

Although it is true that theoretically the courts of the Commonwealth may revive the conviction "at any time," *Simmons*, 448 Mass. at 696, Sok (contrary to his assertions) may pursue a direct appeal and other post-conviction remedies at that time.

Finally, under *Dretke v. Haley, supra*, a habeas court "must first evaluate whether [a petitioner] has shown cause and prejudice sufficient to excuse any procedural default of his claims, before addressing his claim of actual innocence." *Goldman*, — F. Supp.2d at —, 2008 WL 2699396, at *13. Sok cannot establish cause and prejudice, and so the Court briefly considers Sok's miscarriage of justice argument. The Court notes that the "fundamental miscarriage of justice" standard applies in an "extraordinary case, where a

constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further "'actual innocence" means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Sok appears to suggest that he has met this standard because "both the trial court and . . . Commonwealth acknowledged that the factual evidence and intent of the defendant cannot possibly amount to a finding of guilty." (#33 at 3 ) Sok makes too much of the state trial court's statements at sentencing. The state trial judge stated that she thought "the evidence presented was sufficient to establish the elements of the offense," and that  "the case was properly submitted to the jury and the conviction is proper." (#34 at 14) She nevertheless stated that guilty-filing was appropriate because the evidence "did not indicate any intention on the part of the defendant to achieve any sort of sexual gratification." (#34 at 15) Thus, the trial court did not, as Sok suggests, acknowledge that the evidence was insufficient to support the conviction, much less suggest that Sok was factually innocent.

For all these reasons, the Court recommends that Ground Three be dismissed.

4.    Ground Four: Challenge to the Constitutionality of the
Massachusetts  Home Invasion Statute, Mass. Gen. L. ch. 265, § 18C

Sok next contends that the penalty provision of the Massachusetts Home

Invasion statute is unconstitutionally vague.  There is no question here that the

Massachusetts Appeals Court adjudicated this claim on the merits and the

Court's inquiry, under AEDPA's deferential standard of review, is limited to

whether the Appeals Court's decision that the Massachusetts Home Invasion

statute is not unconstitutionally vague amounted to an unreasonable application

of clearly established federal law.

The relevant standard is as follows: "the void-for-vagueness doctrine

requires that a penal statute define the criminal offense with sufficient

definiteness that ordinary people can understand what conduct is prohibited

and in a manner that does not encourage arbitrary and discriminatory

enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (and cases cited);

*see also United States v. Williams,* No. 06-694, –U.S.--, 128 S.Ct. 1830, 1845

(2008) (and cases cited); *Parker v. Levy*, 417 U.S. 733, 757 (1974) ("Void for

vagueness simply means that criminal responsibility should not attach where

one could not reasonably understand that his contemplated conduct is

proscribed.") (internal quotation marks and citation omitted). Moreover, "[t]he

judgment of federal courts as to the vagueness or not of a state statute must be made in the light of prior state constructions of the statute." *Wainwright v. Stone*, 414 U.S. 21, 22 (1973); *see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.5 (1982) ("In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction a state court or enforcement agency has proffered.").

Sok claims that the penalty provision of the armed home invasion statute, as it was amended in 1998, is unconstitutionally vague because 1) the sentencing structure produces anomalous results at sentencing and 2) the probation provision is unclear. The Massachusetts Appeals Court rejected Sok's claim as follows:

> Home invasion statute. The home invasion statute, G.L. c. 265, § 18C, "is not unconstitutionally vague and does not impose cruel and unusual punishment for the crime of home invasion." Commonwealth v. Dunn, 43 Mass. App. Ct. 58, 65 (1997). See Commonwealth v. Berte, 57 Mass. App. Ct. 29 (2003).
>
> Further, the trial judge did not have, under G.L. c. 265 § 18C, the option to sentence the defendant to probation or a suspended sentence. See Commonwealth v. Berte, supra.
>
> However, as in Berte, supra at 35, "[t]he sentence on the conviction for home invasion committed with a firearm is vacated, and the case is remanded for resentencing on this count with a

maximum sentence not to exceed twenty years, and a minimum sentence of ten years imprisonment."

#1, Exh. 3 at 4-5.

In determining Sok's vagueness challenge, the Appeals Court relied on *Commonwealth v. Berte*, 57 Mass. App. Ct. 29, *rev. denied, Commonwealth v. Berte*, 438 Mass. 1109 (2003), which addressed the precise issues the petitioner now raises in his habeas petition. *See id.* at 30 ("The principal issue on appeal is whether G.L. c. 265, § 18C, the home invasion statute, is unconstitutional on its face because of various infirmities in its penalty section."). As *Berte* explained, before the armed home invasion statute was amended in 1998, the statute "permitted a sentencing judge to impose, upon conviction of armed home invasion, an indeterminate sentence 'in the state prison for life or for any term of not less than twenty years.'" *Berte*, 57 Mass. App. Ct. at 30. The amendment in 1998, St.1998, c. 180, § 57, added a twenty-year sentence "for those offenders who committed the crime 'while being armed with a firearm, shotgun, rifle, machine-gun, or assault weapon.'"[13]

---

[13] The amended statute, which is at issue here, provides in relevant part:

Whoever knowingly enters the dwelling place of another knowing or having reason to know that one or more persons are present within or knowingly enters the dwelling place of another and remains in such dwelling place knowing or having reason to know that one or more persons are present within while armed with a dangerous weapon, uses force or

*Id.*  In addition, those who were convicted under this provision were also subject to a provision that stated that "[s]aid sentence shall not be reduced to less than ten years."  The Appeals Court interpreted the sentencing structure "as simply another format for stating the minimum and maximum sentencing range."  *Berte*, 57 Mass. App. Ct. at 32.  So, under this reading of the statute, one who was convicted of committing a home invasion while armed with a firearm, as Sok was, was subject to a ten-year minimum term and a twenty-year maximum term.  At the same time, one who was convicted of a (presumably) less serious offense (e.g., home invasion armed with a "dangerous weapon" not enumerated in the statute, such as a knife), would be subject to a minimum term of twenty years and a maximum term of life.  *See Commonwealth v. Brown*, 431 Mass. 772, 781 (2000) (interpreting 1998 amendment).  The *Berte* court noted "the incongruity of [the] result," *Berte*, 57 Mass. App. Ct. at 32, created by the amendment: "the 1998 amendment imposes a significantly lesser

---

threatens the imminent use of force upon any person within such dwelling place whether or not injury occurs, or intentionally causes any injury to any person within such dwelling place shall be punished by imprisonment in the state prison for life or for any term of not less than twenty years. Whoever commits said crime while being armed with a firearm, shotgun, rifle, machine-gun, or assault weapon shall be punished by imprisonment in the state prison for 20 years. Said sentence shall not be reduced to less than ten years nor shall the person convicted be eligible for probation, parole, furlough, work release or receive any deduction from his sentence for good conduct.

Mass. Gen. L. ch. 265, § 18C.

sentence (ten to twenty years, rather than twenty years to life) on what is intuitively a more serious crime (armed home invasion with a firearm, rather than with some presumably less dangerous weapon)."[14]  *Berte*, 57 Mass. App. Ct. at 33.   It is that incongruity in the sentencing structure that Sok points to as rendering the statute unconstitutionally vague.

The Court first rejects Sok's effort to challenge the statute as vague based on hypothetical scenarios that he posits.  Rather, it is well established that "'[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Williams*, –U.S. at –, 128 S.Ct. at 1845 (quoting *Hoffman Estates,* 455 U.S. at 495); *see also United States v. Mazurie*, 419 U.S. 544, 550 (1975) ("[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.").  As the Supreme Court recently stated: "[The appellate court's] basic mistake [in applying the vagueness doctrine] lies in the belief that the mere fact that close cases can be

---

14

The Massachusetts Supreme Judicial Court likewise noted the incongruity in the amendment, but concluded that "problems with the amendment were simply the result of a legislative oversight, one [the SJC could] not remedy." *Commonwealth v. Brown*, 431 Mass. 772, 781 (2000).  The *Brown* court discerned no ambiguity in the statute itself, and "decline[d] to indulge in intellectual contortions in an effort to render logical a statute that is inherently nonsensical." *Id.* at 781 n.12.  Withal, the *Brown* court invited the state legislature to clarify the incongruity in the amendment, *id.* at 781, and the legislature obliged by reinstating the prior version of the statute.

envisioned renders a statute vague.  That is not so.  Close cases can be imagined under virtually any statute." *Williams*, –U.S. at –, 128 S.Ct. at 1846.

Whatever the infirmities in the 1998 version of the statute, Sok is not entitled to habeas relief on this claim because Sok's conduct squarely placed him in the category of offenders who were subject to a sentence of ten to twenty years incarceration.  Both *Berte* and *Brown* concluded that, although the statute as amended permitted anomalous results, the statute as plainly written was not ambiguous or unclear.  There was, in short, no "indeterminancy" in the statute. *Cf. Williams*, –U.S. at –, 128 S.Ct. at 1846 ("What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the intedeterminancy of precisely what that fact is.").  It was not unreasonable for the Appeals Court to conclude that the statute was not impermissibly vague when, under *Berte*'s construction, the sentencing structure of ten to twenty years unquestionably applied to Sok, and the Appeals Court in fact instructed that *Berte*'s narrowing construction be applied to Sok's case.  *Cf. Bell v. Cone*, 543 U.S. 447, 455-456 (2005) (determinative question is whether state court applied its own narrowing construction).  So, even if the Appeals Court

unreasonably determined that the statute's penalty provisions were not unconstitutionally vague, the Appeals Court "cure[d] this vagueness by applying a narrowing construction on direct appeal." *Bell*, 543 U.S. at 459.

Finally, Sok suggests that the probation provision in the statute is unconstitutionally vague, because it provides insufficient notice of whether the statute permits probation as a sentencing option. (*See* #21 at 42)  The challenged provision reads as follows:

> [N]or shall the person convicted be eligible for probation. . . . The provisions of section 87 of chapter 276 relative to the power of the court to place certain offenders on probation shall not apply to any person 17 years of age or over charged with a violation of this subsection. The sentence imposed upon a person who . . . commits a second or subsequent offense under the provisions of this section shall not be suspended or placed on probation.

Mass. Gen. L. ch. 265, § 18C. *Berte* also resolved this precise question:

> The statute begins by prohibiting probation, goes on to prohibit probation for anyone over the age of seventeen, and concludes by prohibiting probation for repeat offenders.  At first glance, nothing more seems to be happening than a prohibition of probation, but the defendant claims that the additional provisos seem to allow probation in certain circumstances. We encourage the Legislature to examine this part of the statute and amend it if our interpretation does not comport with its intention, but we determine that the

39

> only rule to be gleaned from the statute as written is
> that probation is prohibited.

*Berte*, 57 Mass. App. Ct. at 34 (footnote omitted).  Although, as *Berte* points out, the statute contains some redundancy, the Court cannot conclude that the Appeals Court unreasonably concluded that the probation provision of the statute was not unconstitutionally vague.

### IV.  Conclusion

For all the above reasons, I RECOMMEND that the petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus be DENIED.

## V.  Review by the District Judge

The parties are hereby advised that pursuant to Rule 72, Fed. R. Civ. P.,
any party who objects to this recommendation must file a specific written
objection thereto with the Clerk of this Court within 10 days of the party's
receipt of this Report and Recommendation.   The written objections must
specifically identify the portion of the recommendation, or report to which
objection is made and the basis for such objections.   The parties are further
advised that the United States Court of Appeals for this Circuit has repeatedly
indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude
further appellate review.  *See Keating v. Secretary of Health and Human Services*,
848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d
4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st  Cir. 1983); *United
States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v.
Ford Motor Co.,* 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S.
140 (1985).

/s/ Robert B. Collings
ROBERT B. COLLINGS
United States Magistrate Judge

August 25, 2008.

41